ANN SASSI, Plaintiff, *v.* JERSEY TRUCKING SERVICE, INC., Defendant and Third-Party Plaintiff-Appellant. AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY, Third-Party Defendant-Respondent.

First Department, December 15, 1953.

*Benedict Ginsberg* of counsel (*Michael M. Platzman* with him on the brief; *Benedict Ginsberg,* attorney), for defendant and third-party plaintiff-appellant.

*David A. Ticktin* of counsel (*Jacob Goodman* with him on the brief; *Powers Kaplan & Berger,* attorneys), for third-party defendant-respondent.

BOTEIN, J. The third-party plaintiff, Jersey Trucking Service, Inc. (which will be called " Jersey "), is engaged in the trucking business. On February 2, 1946, it received from another trucker and loaded upon its trucks a quantity of merchandise, shipped by a number of consignors for delivery to various consignees in the city of New York. That night trucks and merchandise were stolen from Jersey's garage.

Notice of the theft was given promptly to the third-party defendant insurance company, which had issued a so-called merchandise floater insurance policy, insuring Jersey upon its liability as a carrier for loss or damage that might be caused under the circumstances operative here; that is, for loss or damage to merchandise owned by others while in the custody of the assured. According to Jersey, the insurance company during the next three years investigated the claims, negotiated with the owners of the goods and assured Jersey it would " effect settlement with the claimants, without requiring anyone to institute suit." Negotiations proved fruitless. More than three years after the theft an action was commenced against Jersey by the assignee of the various owners of the stolen merchandise.

The summons and complaint were turned over immediately to the insurance company, which as promptly returned them, disclaiming liability. A few weeks after joinder of issue in the primary action Jersey served the third-party summons and

complaint on the insurance company, asserting that if held liable to plaintiff it may recover under the policy.

Over three years later plaintiff moved for summary judgment against Jersey, Jersey in turn moved for summary judgment against the insurance company, and the lattter cross-moved for judgment dismissing the third-party complaint. Special Term denied the first two motions, but granted the third-party defendant's cross motion for summary judgment and dismissed the third-party complaint. Jersey appeals from this order of dismissal.

Special Term's decision was based on a holding that the time within which suit could be instituted on the policy had run, by reason of the following provision in the policy: " No suit or action on this Policy for the recovery of any claim, shall be sustainable in any court of law or equity * * * unless commenced within twelve (12) months next after the happening of the loss ".

The insurance company contends that the date of the " happening of the loss " was the date of the theft of the merchandise in 1946, and that Jersey's time in which to bring suit had therefore elapsed. Jersey, the assured, claims that under the terms of the policy, it will suffer no " loss " until required to pay a judgment and cost of litigation; and that its time to sue has therefore not yet begun to run.

The insurance company argues that this is a policy contracting to indemnify Jersey against its liability for specified loss or damage. The loss contemplated under such a policy comes into being immediately upon the occurrence of the theft and remains constant until extinguished by payment or otherwise. Jersey claims, on the other hand, that the insurance company contracted to indemnify it against actual loss it might sustain through the payment of money for claims covered by the policy provisions, and that such loss does not arise until such payment is made. The two types of insurance coverage are often labeled loosely as liability and indemnity insurance, respectively (see Couch's Cyclopedia of Insurance Law [1929 ed. vol. 5, § 1175a]; 1 Richards on Insurance [5th ed.], § 166; 117 A. L. R., p. 239, annotations).

Despite the evident diligence of counsel no New York case and few cases of other jurisdictions have been cited construing the clause in issue in the context of this type of policy. The insurance company relies on *Tubize Chatillon Corp.* v. *White Transp. Co.* (11 F. Supp. 91) in which it was held that a somewhat similar policy was a liability contract, that the disputed

clause therefore referred to the date of physical loss of the merchandise and that the suit was barred by the contract period of limitation contained in the policy. The assured cites *Kroblin Transfer* v. *Birmingham Fire Ins. Co. of Penna.* (239 Iowa 15) in which the court held that the cargo liability policies involved were indemnity policies; and in construing a similar clause held that the cause of action accrued when the legal liability of the assured became fixed and certain — by entry of judgment.

I do not think the applicability of the clause in question can be determined by such Procrustean standards. The type of the policy is not necessarily conclusive as to the meaning of the clause, which must be construed in the policy context. Surely, if a so-called liability policy clearly provided that an action might be instituted within a stated period after judgment is entered against the assured, such provision, if it did not frustrate the basic policy purpose, would control despite the form of the policy itself. Since the clause in issue is not clear and unambiguous enough to be construed on its own language, we must look to the policy as a whole (*Witherstine* v. *Employers' Liability Assur. Corp.*, 235 N. Y. 168).

The policy's coverage clauses, insofar as material herein, insure Jersey on its "liability as a carrier for loss or damage caused directly by perils insured against hereunder, to lawful goods and merchandise  *  *  *  while in the custody of the Assured ". Two indorsements, issued pursuant to the provisions of section 315 of the Interstate Commerce Act and section 63-r of the Public Service Law, read in part as follows: " the Company hereby agrees to pay  *  *  *  any shipper or consignee for all loss of or damage to all property belonging to such shipper or consignee, and coming into the possession of the insured in connection with its *transportation service, for which loss or damage the insured may be held legally liable*" (emphasis supplied). It would appear that the assured will suffer no loss as contemplated by this clause until his liability to the owners of the property has been established.

Draftsmen of insurance policies are presumably skilled in the use of words. Some intricate policy provisions may not yield to clear and unambiguous phrasing; but the simple limitation clause involved here, if it means what the insurance company contends it means, could have been worded in unmistakable and decisive language. Any ambiguity must therefore be resolved against the insurance company (see *Killian* v. *Metropolitan Life Ins. Co.*, 251 N. Y. 44; *Bobrow* v. *United States Cas. Co.*, 231 App. Div. 91).

The ambiguity is especially inexplicable in view of the fact that in many reported cases in this State our courts have construed clauses substantially similar to the one under consideration here — clauses providing that actions must be commenced within specified times after the happening of the loss or after the loss shall occur. (*Mayor of New York* v. *Hamilton Fire Ins. Co.*, 39 N. Y. 45; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235; *Steen* v. *Niagara Fire Ins. Co.*, 89 N. Y. 315; *Margulies* v. *Quaker City Fire & Marine Ins. Co.*, 276 App. Div. 695; *Califano* v. *Citizens Ins. Co. of N. J.*, 163 Misc. 542, affd. 252 App. Div. 731; 3 Richards on Insurance [5th ed.], § 558; Couch's Cyclopedia of Insurance Law [1929 ed., Vol. 7, § 1631]). True, the clause under construction usually appeared in fire insurance policies, and never in a policy of the type under consideration here. But whatever the policy context in which the clause appeared, the courts have held it means the period runs only from the time when under the other policy provisions the insurance company may lawfully be called upon to pay the loss — such as after the period for filing proof of loss has expired; and that the period does not run from the date of the fire itself.

Applying the rationale of this fire insurance rule — insofar as it is applicable — to the type of policy under consideration here, it is evident that the date of '' happening of the loss '' is not synonomous with the date of the theft. Moreover, we are confronted by a fundamental difference in policy coverage. In the usual fire insurance policy it is the property of the assured that is insured. Subject to the provisions of the policy, he controls the time of commencement of legal proceedings. In the policy issued in this case it is the property of persons other than the assured — of shippers and consignees — that is insured. The assured here has no control of any claims they might make. They are not bound by any contractual Statute of Limitations written into the policy. They may drop their claims, they may offer to compromise, they may bring suit the day after the occurrence of the theft or they may bring suit the day before the statutory Statute of Limitations would bar their claims.

There is nothing in this record to indicate that Jersey could frame a complaint within twelve months after the theft. There were a number of shippers and consignees who had suffered loss of their merchandise. The record does not disclose the state of their claims twelve months after the theft. All we know is that over three years later they saw fit to assign their claims and commence suit. Perhaps within twelve months after

the theft Jersey may have brought an action for declaratory judgment, to determine whether it was liable to the consignors or consignees and also to determine the obligation of the insurance company under the policy. Such an action at best would place the insurance company at a disadvantage in handling the claims and in a most ambiguous position between its assured and the third-party claimant.

No other policy provision supports an implication that the parties contemplated a time condition virtually impossible of performance. It may be that the disputed clause slipped into this policy through an understandable inadvertence. The policy is designated on its face as a form of inland marine insurance. Traditionally, inland marine insurance has been written extensively by fire insurance companies, because its coverages embrace all manner of risks, including fire. Had the insurance company regarded this policy as what it is in essence, a liability policy, it is doubtful that so incongruous a provision would be incorporated in the policy. For the policy does insure Jersey against its liability for loss or damage to other persons' property — just as clearly as the more familiar form of automobile liability insurance policy, within a limited range, insures against damage or personal injury.

However, the insurance company must have had reason to believe that this policy offered some of the aspects of liability insurance, for it incorporated by indorsement certain standard provisions prescribed for liability insurance policies in section 167 of the Insurance Law. Significant, as indicating the legislative attitude toward contractual frustration of insurance claims, is paragraph (d) of subdivision 1 of section 167 which reads as follows: " (d) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

We hold, therefore, that the period of limitation contained in the policy did not begin to run until the assured was in a position to institute action against the insurance company. The record before us does not indicate that Jersey was in such a position at any time prior to a period of twelve months before it served its third-party summons and complaint on the insurance company. We need not reach the question as to whether the twelve-month Statute of Limitations was waived by the

insurance company, but we deem it expedient to state that, although rather conclusory, the allegations in the appellant's affidavit were sufficient to raise an issue requiring trial.

The order granting summary judgment against the third-party plaintiff and dismissing the third-party complaint should be reversed and the cross motion denied.

Peck, P. J., Dore, Cohn and Callahan, JJ., concur.

Order granting summary judgment against the third-party plaintiff and dismissing the third-party complaint unanimously reversed and the cross motion denied. Settle order on notice.