William Mertens, J.
This case has been tried before the court and a jury. At the close of the evidence it appears that all of the basic facts controlling in this case are uncontradicted and that there remain for determination only questions of law as to the effect to be given to the provisions of the two insurance policies purchased from the defendants by the plaintiffs deceased husband at the flight insurance counter operated and maintained by the defendants’ agent in the American Airlines Terminal at Kennedy Airport before the deceased embarked on his contemplated round trip flight from New York to Los Angeles on May 20, 1968.
The language of the policies is unambiguous and the question of the effect of the policies in the light of uncontradicted facts does not therefore present any question of factual ambiguity to be resolved by the jury but only presents questions of the law to be resolved by the court.
The court has therefore discharged the jury and is rendering this opinion on the motions of each party for judgment.
*558 The facts are substantially uncontradicted. It appears that Morris Kronfeld, an executive of Blair & Company, was undertaking a business trip to attend a board of directors meeting in the Los Angeles area.
He purchased a round trip ticket from American Airlines. He had a scheduled flight out of‘Kennedy Airport on May 20, 1968, but the specifics of the return trip were left open on his ticket.
Before boarding his plane he purchased, at the airport sales counter maintained by the defendants’ agent at the American Airlines Terminal, two airflight insurance policies, one from each defendant in the amount of $75,000 for a premium of $2.50 for each policy.
The plaintiff was named as the beneficiary in each policy. The two policies are identical in their printed terms. Certain of the handwriting appearing at the top of the policies relating to name and address of insured and beneficiary is that of the decedent and there is some handwriting which is that of the counter sales clerk.
At the counter he was given an envelope by the insurance sales clerk for the purpose of mailing the policies to his home. He so mailed the policies.
Mr. Kronfeld then embarked on his scheduled flight out of New York. He called his wife from Los Angeles on Monday and Tuesday night, May 20 and May 21. His exact whereabouts in the Los Angeles area during this period have not been established except that it is uncontradicted that on Wednesday, May 22, he purchased a ticket at the heliport at Anaheim, a suburb somewhat east of Los Angeles. This ticket was purchased from Los Angeles Airways, the operator of the helicopter service. Mr. Kronfeld boarded the helicopter and on the flight from Anaheim to the Los Angeles Airport, the helicopter crashed, causing the insured’s death.
The original round trip ticket issued by American Airlines had not been manually exchanged and reissued to reflect the helicopter flight from Anaheim to the Los Angeles International Airport. There is no direct evidence that he was en route back to New York on this helicopter flight to the Los Angeles Airport.
It is, however, uncontradicted that his trip from New York to Los Angeles was a limited business trip from which he expected to return upon the completion of his business. That *559 intention having been established, it is presumed to have continued in the absence of evidence to the contrary.
The printed terms of these policies are not ambiguous and therefore do not present the problem of resolving ambiguous language. However, examination of the policy shows that it is lengthy, complex, full of cross references to other provisions, and replete with technical language with which insurance experts may be familiar but of which the air-traveling public is most likely unaware.
The document consists of two long-form pages the size of usual legal size paper. While the policy has printed across its face the legend, "This is a limited policy, read it carefully,” the realities of the sales operation is a fast-moving service at an airport with the policy to be mailed forthwith in the envelope furnished by the sales agent in the easily available and nearby United States postal mail drop. The stamps are also available at the counter.
It was testified by one of the defendants’ witnesses that it is expected that the policy would be mailed and it is not expected that the purchaser take the policy on board the aircraft with him. It is thus evident that the purchaser does not carry the policy with him to alert himself to steps necessary to protect his coverage on any substitute trip or change of itinerary.
The premium paid on the issuance of these policies in New York was $2.50 for each policy. The same premium was payable regardless of the length of any flight by the purchaser of the insurance. The premium was identical whether the purchaser was flying only one way from New York to Philadelphia or around the world starting from and returning to New York. The same premium would be payable even though substitutions and additional stopovers be made in the itinerary while enroute.
Paragraph 3 of the policy was intended to provide insurance coverage on such substitute trip.
The controlling provision of the policies is paragraph 3, dealing with substitute trips and which reads as follows: "3. Substitute trip covered if ticket exchanged. In case of a change in the itinerary of said first airline trip referred to in Section 2 above following the issuance of this policy and after the insured has left the point of departure on said trip, the insurance afforded as set forth in Section 2 above shall no longer apply on the original itinerary but shall apply on the *560 new itinerary in the same manner and to the same extent as it would have applied on the original itinerary, provided that (1) the transportation ticket or pass issued to the insured for said first airline trip prior to his leaving the point of departure has been exchanged for another ticket or pass issued for transportation on an aircraft operated by a scheduled air carrier on the substitute trip, and (2) the point of departure is the same as that shown above and (3) at least one other stop on the new itinerary is a stop that was scheduled in the original itinerary for said first airline trip.”
This paragraph does appear on the first page of the policy and it is on this page that the legend referred to above, namely, "This is a limited policy, read it carefully,” is stamped. It may or may not go right across some of the language found in paragraph 3. -
It is the contention of the plaintiff that this paragraph affords coverage under the policies while the insured was on the helicopter flight from Anaheim to Los Angeles. The defendants resist payment on the ground that the insured failed to comply with the requirements set forth in paragraph 3 of the policies for the physical exchange of this original ticket to reflect the change in his itinerary.
It is, however, conceded that if the insured had physically exchanged his American Airlines ticket to specifically cover the helicopter flight from Anaheim to the Los Angeles Airport, which was concededly on a scheduled air carrier, coverage would have been afforded under the specific terms of paragraph 3 of the policies which extend the coverage automatically to the substitute itinerary at no additional premium.
The rule of strict construction of insurance policies, despite occasional reference to concepts of "intent” and "mutuality of assent” and to particular aspects of the specific case before a court, really rests upon fundamental considerations of public policy. The well established general rule of construing an insurance policy strictly against the insurer and in favor of the insured, that is, in favor of coverage rather than disclaimer of coverage, flows basically from a realization of the disparity of bargaining power between insurer and insured and the fact that an insurance policy is drafted entirely by the insuring company.
In these policies the exchange requirement would suddenly convert a paragraph providing for extension of coverage into *561 one denying coverage. Many courts have long been developing a body of law which renders inoperative disclaimers of limitations upon liability which, because they are found in clauses which are inconspicuous or unexpected, do not fairly alert the purchaser of the policy to the pitfalls in the path of the contemplated and expected coverage. In short, the rule of law has evolved that these exculpatory or exclusionary clauses should not be enforced in the absence of clear and plain notice to the insured. These principles are peculiarly applicable in the case of air flight insurance whether bought at an airport vending machine or sales counter. The air traveling public is given a standardized contract. There is no element of negotiation but simply the purchase of a document which purports to give air flight insurance while the purchaser is engaged in air travel on his trip. Enforcement of this exchange requirement would convert an insurance extension paragraph into an absolute forfeiture clause.
New York has recognized this basic problem in airflight insurance by holding that it is incumbent upon the insurer to give clear notice of noncoverage in order to enforce the noncoverage provisions of its airflight insurance. (Lachs v Fidelity & Casualty Co. of New York, 306 NY 357.)
The New York Court of Appeals has not yet ruled specifically on the clauses of the policies here under consideration in the context of the facts found in this case, nor are there any reported cases in the Appellate Division or trial courts of this State determining this problem. However, there have been decisions in other jurisdictions, Federal and State, dealing with the specific question here involved, namely, the coverage afforded for substitute trips and the effect of the clause purporting to take that coverage away unless there is an exchange of tickets. (See Steven v Fidelity and Cas. Co. of N. Y., 27 Cal Rptr 172; Rosen v Fidelity & Cas. Co. of N. Y., 162 F Supp 211; Fidelity & Cas. Co. of N. Y. v Smith, 189 F2d 315; cf: Mack v Commercial Ins. Co. of Newark, New Jersey [unreported] Court of Appeals, 5th Dist., Stark County, Ohio [Case No. 3834, May 1, 1973, Per Curiam] cert den 1973.)
It is conceded in this case that if the decedent has complied with the ticket exchange procedure, the policies would have covered the helicopter flight. The legal question presented is simply what legal effect is to be given to the clause purporting to take away that coverage in the event of the insured’s noncompliance with that ministerial act.
*562 It is proper to consider whether this requirement for exchange of tickets is a really meaningful condition of the policy. The evidence is uncontradicted that even when an air traveler complies with the proviso and arranges to exchange his ticket the insurance companies are not even notified of that change and do not request of the airlines that they be notified. It appears that the only purpose for this provision for physical exchange of the ticket is that in the event of a crash, it will assist the insurance companies in checking the route taken by the insured. It, of course, is the peg upon which is hung the claim of noncoverage in the event of noncompliance.
The risk of the defendants’ insurance companies is not affected in the slightest degree by whether or not the passenger actually exchanged his ticket. Moreover, the insured, at the time of arranging his substitute trip, does not have the policy with him so as to alert him to this unexpected provision that forfeiture of his coverage will flow from his failure to handle this ticketing precisely as specified in the policy. The California and Federal cases cited above recognize that this requirement for manual exchange of tickets has no significant effect on the insurance risk and these courts have held that it should not be enforced to deny coverage to the air traveling public.
While the Federal and California cases cited above and the Ohio case also cited above are in conflict, this court considers the approach and reasoning expressed by the two Federal courts and the California Supreme Court as expressing a sounder public policy in the developing law relating to the construction of air flight insurance contracts and the effect to be given to exculpatory clauses or provisos contained in such policies. They also accord with the basic policy found in the Lachs case (306 NY 357, supra), decided by the New York Court of Appeals.
In short, as a matter of public policy, the clause requiring ticket exchange in connection with the coverage for substitute trips cannot and should not be enforced to deny coverage when considered in the light of the realities attendant upon the sale and issuance of this kind of insurance in the fast moving circumstances of air travel.
The I.Q. of a passenger or the existence or nonexistence of facilities at a particular airport to exchange the ticket should not be the determinant of coverage. The flying public expects it has obtained coverage when it purchases an insurance *563 policy at the airport. It should be denied that coverage only when the exculpatory clauses are in fact brought clearly to its attention. Public policy surely mandates that there should not be a complete forfeiture of coverage for failure to comply with a purely ministerial requirement that in no way materially affects the risk of the insurer. To hold that it does create a complete forfeiture would be unconscionable and against public policy.
The motion of the defendants for judgment in their favor is denied.
The motion of the plaintiff for judgment in her favor against each defendant is granted. Judgment is directed for the plaintiff against each defendant in the amount of $75,000 with interest from May 22, 1968.