**PERINI CORPORATION,
Plaintiff–Appellant,**

v.

**The CITY OF NEW YORK (PULASKI BRIDGE), Defendant–Appellee.**

**Docket No. 98–7946.**

United States Court of Appeals,
Second Circuit.

Argued March 16, 1999.

Decided May 14, 1999.

Randy J. Heller, New York, N.Y. (Eugene H. Goldberg, McDonough, Marcus, Cohn, Tretter, Heller & Kanca, L.L.P., of counsel), for Plaintiff–Appellant.

Sharyn Rootenberg, Assistant Corporation Counsel for the City of New York, New York, N.Y. (Michael D. Hess, Corporation Counsel, Larry A. Sonnenshein and Jonathan S. Becker, Assistant Corporation Counsel, of counsel), for Defendant–Appellee.

Before OAKES and CALABRESI, Circuit Judges, and GIBSON, Circuit

Judge.*

OAKES, Senior Circuit Judge:

## I. INTRODUCTION

The City of New York (City) contracted with the Perini Corporation (Perini) to reconstruct the Pulaski Bridge. Soon after Perini commenced work in September 1991, the City ordered Perini to stop work because the necessary engineering and construction support services were not yet in place. Perini was directed to resume work in February 1992. In August 1995, Perini sued the City for delay damages caused by the City's suspension of the work. The United States District Court for the Southern District of New York, *Judge* Louis L. Stanton, dismissed Perini's claims as barred by the contractual period of limitations. We hold that summary judgment was improperly granted because Perini's claim for delay damages was not subject to the contractual period of limitations. We therefore vacate the grant of summary judgment and remand for further proceedings.

## II. BACKGROUND

This action arises out of the reconstruction of the Pulaski Bridge, a 3,800–foot drawbridge over the Newtown Creek, connecting Brooklyn with Queens. In June 1991, the City, acting through its Department of Transportation (DOT), contracted with Perini to perform the reconstruction and related incidental work on the bridge. The work was to be completed in 1,246 consecutive calendar days (three years and five months). The City ordered Perini to commence work on September 23, 1991.

As ordered, Perini began work on or about September 23, 1991. But on October 8, 1991, the City ordered Perini to stop work because the necessary resident engineering and construction support services were not yet in place. Perini removed its workers, equipment and materials from

the site. Perini was directed to resume work in February 1992.

While it is uncontroverted that Perini worked on the project for several years, the parties vigorously dispute the date the project was "substantially completed." Article 43 of the contract essentially identifies the date of substantial completion by providing that "[w]hen the work, in the opinion of the Commissioner, has been substantially but not entirely completed, he shall issue a certificate of substantial completion and a voucher calling for payment of any part or all of the balance due under the contract...." Unfortunately, one element of this event—which would have unequivocally indicated when the project was substantially completed—never occurred; that is, no such certificate was issued.

On December 14, 1994, the City conducted what was intended to be a "final inspection" of the project. The record contains conflicting representations as to what happened on that date. According to Perini, the City's mechanical inspectors walked out of the inspection and refused to accept Perini's work as complete. But Perini itself stated in a letter that a final inspection had been performed on December 14, 1994, and that Perini had been "advised" that a substantial completion payment would be prepared and submitted by December 31, 1994. The City did prepare a punch list—a list of tasks that Perini still had to complete—on December 14, 1994. A final inspection of the mechanical components of the job took place on February 2, 1995. On or about February 8, 1995, a final punch list was furnished to Perini.

On March 30, 1995, the City prepared an internal voucher authorizing the Comptroller to prepare a check for payment to Perini for its "substantial completion" moneys. This voucher, which Perini did not see, authorized a reduction of retain-

---

* The Honorable John R. Gibson, Senior Circuit Judge of the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

age from five percent to one percent and approved the release of the substantial completion payment to Perini. As Perini points out, this event is also relevant to the determination of the substantial completion date, because the contract provides that "[r]etainage will be reduced from 5% ... at the point of substantial completion." Perini received the City's substantial completion payment, dated April 20, 1995, on April 27, 1995. Perini contends that it had no notice that the City deemed Perini's contract work to be substantially complete until it received this check.

Perini filed a notice of claim with the Comptroller of the City of New York in February 1995[1] and filed the complaint in this action on August 22, 1995. Perini sued to recover, among other things, damages sustained by reason of the suspension of work.[2] Perini's third cause of action sought an equitable adjustment under the specific "suspension of work" clause ("Suspensions Clause") contained in an addendum to the contract as required by federal regulations. The fourth cause of action sought damages based on the City's failure to provide the resident engineering and construction support services which "was not contemplated by the plaintiff and/or [was] caused by the defendant's bad faith, fraud, misrepresentations of material fact and its willful, malicious, recklessly indifferent or grossly negligent conduct and/or resulted from the defendant's breach of its fundamental obligations under the Contract...."

The City sought summary judgment on Perini's third and fourth causes of action, arguing that the claims were time-barred under the period of limitations contained in Article 53 of the Agreement between the parties. Article 53 provided that,

> No action shall lie or be maintained against the City by the Contractor upon any claims based upon this Agreement unless such action be commenced within four (4) months after the date of filing in the Office of the Comptroller of the City of the certificate for the final payment hereunder, or within four (4) months of the termination or conclusion of this Agreement, or within four (4) months after the accrual of the Cause of Action, whichever first occurs.

The City argued that Perini's cause of action seeking delay damages accrued in October 1991, when the City issued the stop work order, and that Perini had to sue within four months of the stop work order. The United States District Court for the Southern District of New York, *Judge* Louis L. Stanton, agreed and granted summary judgment for the City on Perini's third and fourth causes of action.

Perini appeals.

## III. DISCUSSION

Perini argues that the district court erred by granting summary judgment based on the contractual period of limitations contained in Article 53. It first contends that Article 53 applies only to claims brought under the "Agreement" and therefore did not apply to Perini's third and fourth causes of action, which sought damages for the delay under the Suspensions Clause and for the City's breach of its fundamental contract obligations. In the

---

1. This was not the first time that Perini asked to be compensated for the delay damages. At the time that the City issued the stop work order, Perini informed the City by letter that it expected to be compensated for the damages resulting from the shutdown. Perini again requested compensation by letter dated February 13, 1992. In response, the DOT said that Perini had to file a formal claim with the Comptroller to obtain such compensation. In July 1994, Perini provided the City with an itemized list of the purported dam-

ages it suffered based on the delay. In a January 11, 1995, letter, the DOT informed Perini that its damages for delay were not compensable.

2. Perini also sued to recover the contract balance (first cause of action) and payment for additional work performed (second cause of action). The disposition of Perini's first and second causes of action are not at issue in this appeal.

alternative, Perini asserts that even if Article 53 did apply to its claims for delay damages, that provision did not require Perini to sue the City within four months after the City issued the stop work order in October 1991. Rather, Perini argues, the contract was indivisible and all possible claims accrued only upon "substantial completion" of the construction project. And according to Perini, the project was not substantially complete for purposes of Article 53 until April 27, 1995, when Perini received the substantial completion check or, at the earliest, March 30, 1995, when the City released the final payment voucher and Perini's retainage was reduced from five percent to one percent.[3] Because Perini's complaint was filed within four months and thirty days[4] of either of these dates, Perini argues, the complaint was timely filed.

The City, of course, asserts that the district court properly granted summary judgment. It first argues that the contract was divisible, that Perini's cause of action accrued at the time of the stop work order on October 8, 1991, and that Perini had to sue within four months of that date in order to be timely under Article 53. In the alternative, the City maintains that even if the contract were indivisible and Perini's claims accrued upon substantial completion of the entire project, Perini's action was still time-barred because any "reasonable" substantial completion date was well over four months before Perini filed the complaint. The City proffers what it believes to be "reasonable" substantial completion dates: December 14, 1994, when the City alleges that a final inspection of Perini's work was conducted (even though Perini allegedly did not pass inspection and even though another inspection took place on February 2, 1995), or January 11, 1995, when Perini's itemized damages were rejected as non-compensable by the DOT.

We may distill the central issues of this appeal into three related questions. First, did the contractual period of limitations contained in Article 53 apply to Perini's causes of action for delay damages? Second, if Article 53 did apply and Perini's cause of action had to be brought within four months of the date it accrued, was the contract a divisible one such that Perini's cause of action accrued as of the date of the stop work order, or was the contract indivisible such that Perini's cause of action accrued upon substantial completion of the project? And, finally, if the contract were indivisible and the cause of action accrued upon substantial completion, could the date of substantial completion be de-

---

**3.** It is relevant that Perini did not have notice of the release of the final payment voucher, as several New York cases indicate that a plaintiff's action should not be dismissed as time-barred where a defendant, who controls the timing of the event that triggers the period of limitation, does not alert the plaintiff when that event occurs. *See Hauer Constr. Co. v. City of New York*, 193 Misc. 747, 749–50, 85 N.Y.S.2d 42, 44 (1st Dep't 1948) ("[W]here the act which starts the contractual period of limitation to run is one to be performed by the City, viz., the filing of the final certificate in the Comptroller's office, common fairness would dictate that the contractor be given notice of such filing so that it might thereby be apprised of the fact that the period of limitation had actually commenced to run."); *see also Nickerson v. City of Jamestown*, 178 A.D.2d 1003, 1003, 578 N.Y.S.2d 338, 339 (4th Dep't 1991) ("Because a party ... should not have to guess when a 'final and binding' determination [that triggers the period of lim-

itation] has been made, courts place the burden upon the administrative agency to demonstrate the existence of a final and binding determination, and any ambiguity created by the agency must be construed against it."); *David Coyne & Co. v. Board of Educ.*, 63 A.D.2d 900, 900–01, 405 N.Y.S.2d 714, 716 (1st Dep't 1978) (where period of limitations did not begin to run until contractor received notice of final payment certificate, existence of fact issues as to whether plaintiff had actually received certificate precluded summary judgment on grounds that action was not timely).

**4.** The New York Administrative Code provides for a thirty day notice of claim condition precedent to suit against the City, which allows an additional thirty days to bring suit. *See* New York City Code § 7-201(a) (1998); *see also id.* at ¶ 61 & ¶ 126.

termined upon a motion for summary judgment? If we answer the first question in the negative, then we need not consider the latter two questions. We therefore first consider whether Perini's claims for delay damages were subject to the contractual period of limitations contained in Article 53.

■ As noted above, Article 53 states that "No action shall lie or be maintained against the City by the Contractor upon any claims *based upon this Agreement* unless such action be commenced within four (4) months...." (Emphasis added). Perini argues that because Article 53 expressly refers to claims "based upon this Agreement," it does not apply to causes of action based on rights or provisions that are not found in the Agreement. Perini further reasons that its third and fourth causes of action were not subject to Article 53 because they were not "based upon" the Agreement. Rather, Perini's third and fourth causes of action were based respectively on the federally mandated "Suspensions Clause" located in Addendum 1, Schedule K, and on violations of a fundamental obligation not found in the Agreement. Those causes of action alleged that the "Suspensions Clause" superseded all other provisions in the contract, that the City unreasonably delayed in providing the resident engineering and construction support services, and that the City's order for Perini to commence work in September 1991 (when the City was aware that the support services were unavailable) was a misrepresentation relied on by Perini, to its detriment.

Perini's reading of Article 53 seems to us a reasonable one. As Perini points out, Article 1 of the Agreement carefully distinguishes between the "Agreement," the "Contract" and "Addenda." Chapter I, Article 1, is entitled "The Contract" and states that,

> [T]he following ... shall be deemed to be *part of this contract.*
>
> 1. The Advertisement and Proposal for bids.
> 2. The Bid.
> 3. *The Agreement.*
>
> . . .
>
> 7. *All Addenda* issued by the Commissioner prior to the receipt of bids.
> 8. All provisions required by law to be inserted in this contract, whether actually inserted or not.

(Emphasis added). Given the language expressly denoting the Agreement as "part" of the Contract, we may infer that a contract provision that specifically refers to the Agreement does not encompass the Contract in its entirety. Likewise, the distinction between the terms "Agreement" and "Addenda" in Article 1 suggests that specific references to the Agreement do not encompass the Addenda. Other provisions of the contract also distinguish between Contract and Agreement with at least a measure of particularity.[5]

The City did not respond to Perini's argument that Article 53 did not apply to its claims for delay damages in its brief on appeal. When asked about it at oral argument, the City could offer no explanation why Article 53 used the term "Agreement" rather than "Contract." Instead, the City simply insisted that Article 53 applied to all claims based on the Contract because the Contract subsumed the Agreement.

■ To the extent that the scope of Article 53 is ambiguous, we must interpret that provision against the City, which drafted the provision. *See In re Castaways Motel v. Schuyler,* 24 N.Y.2d 120,

---

5. Article 2, which defines various terms used throughout the contract, defines "Addendum" and "Addenda" as *"additional contract provisions* issued in writing by the Commissioner prior to the receipt of bids," and defines "Contract" or "Contract Documents" as "each of the various parts of the contract referred to in Article 1 hereof, both as a whole and severally." (Emphasis added). But because Article 2 does not define "Agreement," it sheds little light as to whether Article 53's reference to "claims based upon this Agreement" should be read to include claims based on Addenda to the contract.

126–27, 247 N.E.2d 124, 128, 299 N.Y.S.2d 148, 153 (N.Y.1969) ("In dealing with this dilatory defense the courts should resolve any ambiguity created by the public body against it. . . ."); *Comey v. United Surety Co.*, 217 N.Y. 268, 277, 111 N.E. 832, 835 (N.Y.1916) (Cardozo, *J.*) ("The language of the bond is the defendant's, the general law of limitations is not to be readily displaced, and words of doubtful meaning must be construed in favor of the plaintiff."); *Hurlbut v. Christiano*, 63 A.D.2d 1116, 1117, 405 N.Y.S.2d 871, 873 (4th Dep't 1978) (" 'Contractual stipulations which limit the right to sue to a period shorter than that granted by statute, are not looked upon with favor because they are in derogation of the statutory limitation. Hence, they should be construed with strictness against the party invoking them.' ") (quoting *Hauer Constr. Co. v. City of New York*, 193 Misc. 747, 749, 85 N.Y.S.2d 42, 44 (1st Dep't 1948)).

In our view, we may not ignore the fact that Article 53 uses the term "Agreement" rather than "Contract." The provision's plain language limits its scope to actions "based upon this Agreement." Moreover, the City easily could have worded a period of limitations intended to cover any cause of action based on the Contract, rather than only those causes of action based upon the Agreement, in "unmistakable and decisive" language. *Sassi v. Jersey Trucking Serv.*, 283 A.D. 73, 76, 126 N.Y.S.2d 389, 393 (1st Dep't 1953) (construing ambiguous limitation clause against drafter, where such clause could have been worded in unmistakable and decisive language). We therefore decline to extrapolate the period of limitation contained in Article 53 to apply to all causes of action based on the Contract. *See also Leith Constr. Co. v. Board of Educ.*, 62 A.D.2d 1050, 1051, 404 N.Y.S.2d 151, 153 (2d Dep't 1978) (holding that six-month contractual period of limitation, which expressly applied when contract terminated under Article 21, did not apply when contractor terminated on other basis).

We conclude that the district court erred by applying the contractual period of limitations contained in Article 53 to Perini's third and fourth causes of action. We therefore vacate the grant of summary judgment and remand for further proceedings.

Because we have decided that the contractual period of limitations contained in Article 53 did not apply to Perini's causes of action for delay damages, we express no view as to whether Perini's cause of action accrued as of the date of the stop work order or upon substantial completion of the project. We also need not decide when the project was substantially complete.

## IV. *CONCLUSION*

Because Perini's claim for damages caused by the City's suspension of work was not subject to the contractual period of limitations, summary judgment was improperly granted. We therefore vacate the grant of summary judgment and remand for further proceedings.