OPINION OF THE COURT
Karia Moskowitz, J.
In this dispute over delays at a municipal construction site, defendant City of New York moves, pursuant to CPLR 3211 (a) (1), (2), (5) and (7), to dismiss the fourth and fifth causes of action of plaintiff contractor’s complaint on the ground that the claims are time-barred. In addition, the City argues that the fourth cause of action is based on the equitable doctrine of quantum meruit and, therefore, requires dismissal, because there exists a valid written contract governing the subject matter of the parties’ dispute.
In February 1994, plaintiff Delidakis Construction Co., Inc. was the winning bidder for a public improvement construction project involving the replacement of the Victory Boulevard Pedestrian Bridge over the Staten Island Rapid Transit Line, Department of Transportation (DOT) contract No. HRBC002. There is no dispute that the project was substantially completed as of May 31, 1999, and plaintiff concedes that its claim accrued on that date. Plaintiff commenced this action on October 21, 2004. The first three causes of action of plaintiffs complaint, not at issue on this motion, seek payment for extra work in the amount of $213,696. The fourth cause of action asserts that plaintiff supplied additional labor, materials, equipment and services under the contract and thus is entitled to an “equitable adjustment” (complaint 1i 19) in the amount of $2,656,674. The City’s failure to compensate plaintiff for this additional work allegedly constitutes a breach of the contract. The fifth cause of action seeks damages in the same amount for delays in the performance of plaintiffs work that the City caused.
The City argues that the fourth and fifth causes of action are barred by a contractual four-month statute of limitations. The City relies on article 53 of a section of the contract called the “Agreement,” that states in pertinent part as follows:
*519 “No action shall lie or be maintained, against the City by the Contractor upon any claims based upon this Agreement unless such action be commenced within four (4) months after the date of filing in the office of the Comptroller of the City of the certificate for the final payment hereunder, or within four (4) months of the termination or conclusion of this Agreement, or within four (4) months after the accrual of the Cause of Action, whichever first occurs.” (Frade affirmation, exhibit A-3, at 00250.)
Plaintiff argues that, although the contract provided for a completion time of 456 calendar days, the City failed to design, administer and manage the construction project properlyxThisx resulted in an additional four years to complete the project, subjecting plaintiff to substantial additional costs and expenses. According to the affidavit of plaintiffs president, Bob Delidimitriou, “constant changes and corrections by the City to the design and drawings, unforeseen conditions, the City’s failure to appropriately coordinate work of other contractors and other projects, and inclement weather conditions” caused the delays. (Delidimitriou affirmation 1i 5.) Mr. Delidimitriou further avers that the City acknowledged the delays on several occasions and granted some of plaintiffs requests for time extensions.
Plaintiff contends that the contract consists of various documents, including the proposal for bids, plaintiffs bid, the technical specifications and the agreement. The four-month statute of limitations is contained in article 53 of the agreement and applies to “claims based on this Agreement.” Because plaintiffs claims for delay damages are allegedly based on the contract, not the agreement, plaintiff argues that the four-month statute of limitations does not apply, relying on the holding of the United States Court of Appeals for the Second Circuit when it construed the identical provision of a New York City construction contract in Perini Corp. v City of New York (Pulaski Bridge) (178 F3d 90 [2d Cir 1999]).
Perini involved the reconstruction of the Pulaski Bridge. In that case, the contractor argued that its third and fourth causes of action, seeking compensation from the City for the extensive delays on the project, were based on a federally-mandated “Suspensions Clause” located in an addendum to the construction contract and on violations of fundamental obligations not found in the agreement. The Second Circuit accepted the *520 contractor’s argument,[1] because article 53 uses the term “Agreement” as opposed to the term “Contract,” and article 1 of the agreement “carefully distinguishes between the ‘Agreement,’ the ‘Contract’ and ‘Addenda.’ ” (178 F3d at 94.) “Given the language expressly denoting the Agreement as ‘part’ of the Contract, we may infer that a contract provision that specifically refers to the Agreement does not encompass the Contract in its entirety.” (Id.) The Second Circuit ruled that, to the extent that the scope of this provision is ambiguous, it must be interpreted against the City (id. at 94-95). At the same time it stated that the “plain language limits its scope to actions ‘based upon this Agreement,’ ” and that it could not ignore this “ ‘unmistakable and decisive’ language.” (Id. at. 95, quoting Sassi v Jersey Trucking Serv., 283 App Div 73, 76 [1st Dept 1953].)
Perini is not binding precedent on this court. While a lower federal court’s interpretation of the Federal Constitution or a federal statute may be considered persuasive or useful authority (People v Kin Kan, 78 NY2d 54, 59-60 [1991]; New York R.T. Corp. v City of New York, 275 NY 258, 265 [1937], affd 303 US 573 [1938]), Perini involves only the interpretation of a municipal construction contract. Nor does the First Department’s decision in Sassi v Jersey Trucking Serv. (supra), that involved the interpretation of the words “happening of the loss” in an insurance policy, compel the result reached in Perini.[2]
Article 1 of chapter I of the agreement does not carefully distinguish between the contract and the agreement; it merely lists all of the documents comprising the parties’ written contract, including the agreement. This document is a compilation of general, nontechnical and non-project-specific contractual *521 provisions that apply to all DOT construction sites involving bridges. For example, the agreement covers such important items as inspections (art 6), protection of the work site (art 7), giving notice of conditions causing delay (art 11), extensions of time for performance (art 13), no damages for delay (art 13 [H]), subcontracts (art 18), insurance (art 22), changes and extra work (arts 25A, 26), resolution of disputes (art 27), and claims and actions against the City (ch XI, art 53). The only interpretation of article 53 that makes sense is that the terms “Agreement” and “Contract” are synonymous. The terms are used interchangeably throughout the entire contract and within the agreement section itself. For example, in articles 59 and 59A of the agreement, the City is given the right to terminate “this agreement,” “this contract” and “this Contract” for various reasons. (Frade affirmation, exhibit A-3, at 00255.) Any other interpretation would lead to the absurd result of permitting termination of the agreement and a continuation of the remainder of the contract. Where an “agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity.” (Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002] [citations omitted].)
Article 64 of the agreement, as article 53 does, uses the term “Agreement” exclusively. It provides that “[t]his Agreement is subject to the provisions of . . . the Americans with Disabilities Act of 1990 . . . Contractor shall not discriminate against an individual with a disability ... in providing services, programs or activities pursuant to this Agreement” (Frade affirmation, exhibit A-3, at 00266). A contractor does not provide services under the agreement, rather the technical specifications, general conditions and special provisions of the contract detail what services the contractor shall perform. Under plaintiffs theory, the provisions of the Americans With Disabilities Act would not apply to any contractor operating under this contract, because the use of the term “Agreement” instead of the term “Contract” completely undermines the provision. Courts must avoid interpretations that would leave a contractual provision meaningless. (Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403 [1984].) This is particularly important where the contractual provision has been a standard provision in city contracts for over half a century and embodies important public policy concerns, namely, “discouraging] stale and fraudulent claims for ‘extras’ against the city.” (Soviero Bros. Contr. *522 Corp. v City of New York, 286 App Div 435, 439 [1st Dept 1955], affd 2 NY2d 924 [1957].)
As discussed above, the court in Perini appeared to have erred when it construed the language of article 53 as ambiguous, perhaps because the parties had not fully litigated and argued that issue. Moreover, to the extent that there was some ambiguity caused by the use of the term “Agreement” in article 53, there was a requirement to request prebid clarification. Section 1.01.09 of the information for bidders requires the contractor to “examine the Contract Documents carefully and before bidding must request the Commissioner in writing for an interpretation or correction of every patent ambiguity, inconsistency or error therein” (Frade affirmation, exhibit A-l, at 00140). Plaintiff failed to clarify the meaning of the contractual language it now claims is ambiguous before submitting its bid. Thus, plaintiff is bound by the City’s reasonable interpretation of article 53. (Acme Bldrs. v Facilities Dev. Corp., 51 NY2d 833, 834 [1980]; Cipico Constr. v City of New York, 279 AD2d 416 [1st Dept 2001]; Thalle Constr. Co. v City of New York, 256 AD2d 157, 158 [1st Dept 1998]; Lake Constr. & Dev. Corp. v City of New York, 211 AD2d 514, 515 [1st Dept 1995].)
Nor does the court accept plaintiffs argument that its claims for additional work and delay damages do not arise under the agreement, but under the contract, when the agreement is part and parcel of the contract. Plaintiff argues that the City failed to perform several fundamental obligations required of it under the contract, not the agreement. These include a failure to provide accurate plans, drawings and specifications as set forth in the general conditions and special provisions of the contract and a failure to investigate changes occurring from unforseen conditions in a timely fashion, that is required under section 1.01.08 of the proposal for bids. However, plaintiff cannot divorce itself from relevant provisions of the agreement that also apply to its damage claims. For example, article 11 of the agreement requires a contractor to give prompt notice of conditions causing delays, and article 13 (H) contains a “no damages for delay provision,” that is standard in city construction contracts.
Accordingly, because plaintiff waited over five years to commence suit after its claims accrued in May 1999, the fourth and fifth causes of action are time-barred.
Alternatively, to the extent the fourth cause of action is based on a quantum meruit theory, it is subject to dismissal. It *523 is well settled that quantum meruit may not be used to circumvent a contract and a court will not make an inference of any implied agreement that invalidates the express terms of a contract clearly covering the dispute between the parties. (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388-389 [1987]; see also Aviv Constr. v Antiquarium, Ltd., 259 AD2d 445, 446-447 [1st Dept 1999]; North Star Contr. Corp. v City of New York, 203 AD2d 214, 215 [1st Dept 1994]; Buckley & Co. v City of New York, 121 AD2d 933, 936 [1st Dept 1986].)
For the foregoing reasons, it is hereby ordered that defendant’s motion to dismiss the fourth and fifth causes of action is granted and those claims are dismissed and the remaining causes of action are severed and shall continue.

. The District Court did not address and the City did not brief this argument in its appellate brief. Rather, the focus of the appeal was on the District Court’s holding that the four-month statute of limitations accrued when the City issued a stop work order one month after the contractor commenced work on the project and not years later when the project was substantially complete. During oral argument of the appeal, counsel for the City could not offer an explanation as to why article 53 used the term “Agreement” rather than “Contract.”

. No court has cited Perini when faced with the interpretation of a DOT construction contract. In Grace Indus. v New York City Dept. of Transp. (Sup Ct, NY County, July 19, 2004, Cahn, J., Index No. 604011/99), the court dismissed as time-barred contractor claims arising from a DOT bridge project based on article 53 of the agreement. The City only mentioned the case in its moving papers anticipating that the contractor would argue what plaintiff has argued here. However, the contractor in that case did not rely on Perini.