JET SETTING SERVICE CORPORATION, Respondent-Appellant, v LEONARD TOOMEY, Appellant-Respondent.

First Department, February 8, 1983

APPEARANCES OF COUNSEL

*Edward D. Greenberg* of counsel (*Schechter, Schwartz & Greenberg,* attorneys), for respondent-appellant.

*John H. Gettinger* of counsel (*Alan Jay Martin* and *Mark E. Abrams* with him on the brief; *Abrams & Martin, P. C.,* attorneys), for appellant-respondent.

OPINION OF THE COURT

Ross, J.

We are well aware of the hornbook principle that an insurance broker is an agent of the insured (*Clinchy v Grandview Dairy,* 283 NY 39). Although we are constrained to accept this principle, we believe that the facts in this case may compel a contrary conclusion insofar as this suit is concerned.

Plaintiff is a jewelry contractor. Michael Zuckerman (Zuckerman), who is secretary-treasurer of the plaintiff, described plaintiff's business this way: "We performed services for certain accounts in the jewelry trade, such as setting stones in rings, watches, etc.; polishing the stones; and generally creating a complete piece of jewelry".

This work was done on plaintiff's premises, and the jewelry and gems were the property of plaintiff's customers, who delivered them to plaintiff for processing.

In 1977, Sears, Roebuck and Company, one of plaintiff's accounts, requested plaintiff to obtain an "all risk" policy of insurance to protect its merchandise while it was in plaintiff's custody.

An "all risk" policy of insurance in the jewelry trade is commonly referred to as a jewellers' block policy.[1] Despite the fact that plaintiff had been associated with jewelry processing for about eight years, it had no experience with a jewellers' block policy, since this kind of insurance was designed for jewelry retailers, wholesalers and manufacturers, who operated in a different area of the jewelry trade than did the plaintiff.

Zuckerman, in his affidavit submitted to Special Term, stated that:

"6. Through a contact in the trade, we were advised that this coverage could be obtained through GORDON EXCESS COVERAGE, LTD. ('GORDON').

"7. Accordingly, we contacted someone at GORDON by the name of John Evans. I believe that this was in November of 1977. Mr. Evans indicated that he would have someone set up an appointment to discuss the matter with us.

"8. Shortly thereafter, we were contacted by MANNY NUSSBAUM. Mr. Nussbaum came to our place of business, discussed our insurance requirements, and I believe he prepared an application for insurance. We paid whatever premium was requested by Mr. Nussbaum."

---

1. In *Woods Patchogue Corp. v Franklin Nat. Ins. Co. of N. Y.* (5 NY2d 479, 482) the Court of Appeals said: "The idea [jewellers' block policy] was conceived by a Lloyds of London underwriter at the turn of the century. Many American jewelers availed themselves of this policy since it provided them with the only adequate coverage for the various risks inherent in their businesses".

Nussbaum processed plaintiff's application through Gordon; and Gordon forwarded the application to the underwriters of Lloyd's of London (Lloyd's) who approved the issuance of a jewellers' block policy to plaintiff in the amount of $100,000 for a 12-month period, commencing November 16, 1977.

As evidence that plaintiff was now insured, Lloyd's sent a so-called "Cover Note" to Gordon, which Gordon in turn transmitted to plaintiff. After reading this "Cover Note", representatives of the plaintiff believed that it was a policy of insurance.

In November, 1978 plaintiff through Gordon renewed this jewellers' block policy for another year; but, plaintiff reduced its coverage from $100,000 to $50,000. The plaintiff paid the premium and Lloyd's approved the reduced coverage for a 12-month period, commencing November 16, 1978. As evidence that the insurance had been renewed, Lloyd's sent a so-called "Debit Note" to Gordon, which Gordon in turn transmitted to plaintiff.

After representatives of the plaintiff read the "Debit Note", they concluded that it was an insurance policy.

Our examination of the "Cover Note"[2] and the "Debit Note"[3] lends credence to the plaintiff's belief that they may appear to be insurance policies to one unfamiliar with the insurance business. Both of them set forth the insurance period, the amount of the coverage, the amount of the premium, the schedule of property insured, and the limitations of and exceptions to liability. Also, they each contained a list of the Lloyd's underwriters participating in the insurance.[4] Neither the "Cover Note" nor the "Debit

---

**2.** A copy of this three-page "Cover Note", which pertains to the 1977 insurance appears as Appendix A to this opinion.

**3.** A copy of this three-page "Debit Note", which pertains to the 1978 insurance appears as Appendix B to this opinion.

**4.** New York Jurisprudence (vol 29, Insurance, § 246) in pertinent part, explains how Lloyd's conducts business. "Thus, 'London Lloyds' [sic] is a voluntary association of merchants, shipowners, underwriters, and brokers, originating in the 17th century, which was granted in 1871 all the rights and privileges of a corporation * * * [E]ach underwriting member of the association who wishes to do so subscribes his name and the share of the total risk that he desires to take and the insurance is effected when the total

Note" contained any exclusion from coverage for the dishonesty of any person who worked for the plaintiff. It is undisputed that at the time that the plaintiff received them, no one on behalf of either Gordon or of Lloyd's advised plaintiff that the "Credit Note" and/or the "Debit Note" were not intended to be anything else other than insurance policies.

Within the period of coverage under the 1978 "Debit Note", on April 29, 1979 jewelry worth more than $100,000 was stolen from plaintiff by a person by the name of Edgar Rodriguez (Rodriguez),[5] a stone polisher, who did his work on plaintiff's premises. Subsequently, $35,000 in jewelry was recovered. There is a strongly disputed question of fact as to whether Rodriguez was an independent contractor, or plaintiff's employee.

Plaintiff promptly submitted a claim to Lloyd's.

While awaiting the outcome of Lloyd's investigation of the theft, plaintiff's representatives for the first time were advised that the 1978 "Debit Note" was allegedly not the complete contract of the insurance; but that there was another policy in existence that pertained to the coverage. Thus, the plaintiff asked Nussbaum for a copy of this alleged other policy. Several months after plaintiff's request, in August, 1979, Nussbaum forwarded to plaintiff what he claimed was the actual policy. Incidentally, in his letter of transmittal, Nussbaum simply states: "[e]nclosed please find original policy", without offering any explanation why plaintiff had not been furnished this alleged original policy sooner.

Lloyd's admits that it advised an insured of coverage only by sending a "Cover Note" or a "Debit Note". During argument, Lloyd's attorney informed the court that the policy remains with Lloyd's in England. Lloyd's does not contend that after it approved the coverage anyone advised the plaintiff that, besides the "Cover Note" and the "Debit Note", there was any underlying policy that contained

---

is reached, at which time a policy in the form approved by Lloyds [sic] is then issued, containing the names of the underwriters bound thereby and the name of their attorney in fact who handles the insurance affairs of the group".

5. Edgar Rodriguez was arrested, indicted, pleaded guilty and was incarcerated for this crime.

additional terms, and that this policy was only available on request. In spite of the fact that it may be the custom of Lloyd's to hold back the underlying policy, this custom is in violation of the regulations of the New York Insurance Department (Department).

The Department, in 11 NYCRR 27.7, specifically indicated how Gordon, as an excess line broker licensed in New York, who represented Lloyd's — an entity not licensed by the State of New York — had to advise plaintiff about the effect of the "Cover Note" and the "Debit Note", if these documents were not meant to be policies of insurance. In pertinent part this regulation reads:

"27.7 Advice to insureds as to coverage; evidence of coverage * * *

"(b) No excess line broker shall * * * transmit, to a person or entity ordering insurance to be issued by one or more unauthorized insurers, any memorandum, certificate or other document which in appearance resembles an insurance policy or gives the impression by imprinted words or otherwise that it is an insurance policy, unless such document is a policy of insurance actually issued by the unauthorized insurer. If any such document delivered by the excess line broker is not an insurance policy but purports to confirm the placement of insurance with an unauthorized insurer or insurers, it shall identify the insurer or insurers by name and address, shall contain an accurate description of coverage, premium and terms, and shall bear across its face, in not less than 10-point bold red type, the following legend:

" 'THIS IS NOT AN INSURANCE POLICY AND THE INSURER * * * HEREIN REFERRED TO IS * * * NOT LICENSED BY THE STATE OF NEW YORK AND NOT SUBJECT TO ITS SUPERVISION. THE INSURANCE CONFIRMED HEREIN, IN THE EVENT OF THE INSOLVENCY OF THE INSURER, IS NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS.' "

Neither Gordon nor Lloyd's contend that they complied with 11 NYCRR 27.7.

Further, the Department requires, pursuant to 11 NYCRR 27.8,[6] that the policy of insurance such as was here placed by Gordon's on behalf of plaintiff with a nonlicensed insurer like Lloyd's must be promptly delivered to the insured. Concededly Gordon and Lloyd's also did not comply with this regulation. As mentioned, *supra,* the alleged actual policy was not delivered to plaintiff until approximately nine months after plaintiff's renewed coverage had been approved and approximately four months after plaintiff made a claim.

Finally, in October, 1979, Lloyd's rejected plaintiff's claim on the basis of an exclusion contained in this so-called actual policy of insurance. The provision of this policy that Lloyd's relies upon, in essence, excludes losses sustained by theft by a person to whom property has been entrusted by the plaintiff. To repeat, no such exclusion appeared in the "Debit Note" or "Cover Note".

Significantly, examination of the application prepared by Nussbaum, for plaintiff, concerning the coverage, which application is referred to in the "Debit Note" as the "Form" of coverage and that resulted in the issuance of the 1978 "Debit Note", reveals that this application contains no reference to any exclusion for dishonesty. This fact would *also* support plaintiff's contention that Nussbaum never discussed a fidelity bond with them.

Plaintiff commenced a declaratory judgment action to have Lloyd's declared liable to reimburse it for the theft. Lloyd's joined issue and denied liability on the basis of the exclusion contained in the policy delivered after the claim was made.

Without the language mandated by the Department's regulations, cited *supra,* which is intended to protect the

---

6. 11 NYCRR 27.8 in pertinent part reads:

"Delivery of policy or contract of insurance-legend to be endorsed thereon. Every policy or contract of insurance placed by a licensee with an unauthorized insurer shall be delivered to the insured as *promptly as possible* and shall bear across its face, in not less than 10-point bold red type, the following legend:

" 'THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN INSURER * * * NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND NOT PROTECTED, IN THE EVENT OF THE INSOLVENCY OF THE INSURER, BY THE NEW YORK STATE SECURITY FUNDS.' "

(Emphasis added.)

insured, Lloyd's "Debit Note" and "Cover Note" could be deceiving to the insured because they so closely resemble insurance policies. It is beyond debate that Lloyd's and its New York representative Gordon violated our State's Insurance Law and regulations.

Nussbaum testified that when he first talked to representatives of the plaintiff about coverage he told them about the fidelity coverage. Even though Nussbaum testified that plaintiff did not want fidelity coverage, neither he nor Lloyd's explain why the "Cover Note" and the "Debit Note" do not contain a reference to a fidelity exclusion among the many exclusions they do contain. The plaintiff denies that Nussbaum ever told its representatives that jewellers' block policy coverage usually contains a fidelity exclusion.

Both plaintiff and defendant moved for summary judgment and Special Term denied their respective motions because it decided that there are triable issues of fact and law. Both parties appeal.

We agree with Special Term.

Defendant Lloyd's contends that Nussbaum is plaintiff's agent and, therefore, Lloyd's is not liable for any misrepresentation, if any occurred. Thus, Lloyd's argues that, since Nussbaum knew of the fidelity exclusion, his knowledge bound plaintiff, because this knowledge was within the scope of his employment as the insured's agent. (44 CJS, Insurance, § 140.)

A summary disposition is not indicated since we conclude that there are questions of fact to be litigated. For example:

1. Should the plaintiff have been aware of the custom of the industry that a jewellers' block policy, also known as an "all risk" policy normally contains a fidelity exclusion? As the Court of Appeals wrote in *Harris v Tumbridge* (83 NY 92, 100): "[A] custom or usage which binds the parties to a contract does so only upon the principle either that they have knowledge of its existence or that it is so general that they must be supposed to have contracted with reference to it".

2. Was Nussbaum the agent of plaintiff, having been sent to plaintiff by Gordon Excess Coverage, Ltd. (Lloyd's New York representative)? New York Jurisprudence (vol 29, Insurance, § 425) states: "Whether an insurance broker represents the insurer or the insured is a question which cannot be answered absolutely but which depends upon the circumstances of the particular case * * * The question is one of fact".

3. Could one reasonably believe the "Cover Note" to be an insurance policy?

4. Could one reasonably believe the "Debit Note" to be an insurance policy?

5. Although both the "Debit Note" and the "Cover Note" contained many exclusions from coverage, neither excluded coverage for dishonest acts. What impact did this have on the relationship between the parties?

6. If there was a fidelity exclusion, then a question of fact exists as to whether Rodriguez was an employee or an independent contractor.

Any one of the above issues of fact may be enough to require a trial, but all of them appearing in one case mandates such result.

Accordingly, the order, Supreme Court, New York County (ASCIONE, J.), entered March 11, 1982, which denied the defendant's motion for summary judgment to dismiss the complaint, and denied the plaintiff's cross motion to strike the defendant's answer, should be affirmed, without costs.

SULLIVAN, J. P., CARRO, ASCH and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on March 11, 1982, unanimously affirmed, without costs and without disbursements.

**APPENDIX A**

Cover Note

JB7800185418

Halford, Shead
& Company

_____*DEF's*_____EXHIBIT
DATED .......*8/1/80*.......

CARLA PANOS

Lloyds Brokers

Registered Office
22 Billiter Street
London EC3M 2SA

Telephone 01 488 0808
Telegrams Howden London EC3
International Telex 882171

---

We confirm having arranged the following insurance with:   100% Underwriters
at Lloyds.

Type:       JEWELLERS BLOCK POLICY

Form:       O(L) Proposal Form dated: 15th November, 1977

Assured:    JET SETTING SERVICE CORP.,
            10th Floor, 25 West 45th Street,
            New York,
            N.Y.

Period:     16th November, 1977 for 12 months.

Interest:   Stock and/or interest as per policy.

Sum Insured: Section 1.A. U.S.$100,000
                       B. No Liability
                       C. No Liability
                       D. No Liability
                       E. No Liability

             Section 2.A. U.S.$100,000
                       B. No Liability
                       C. No Liability
                       D. No Liability
                       E. U.S.$ 25,000

Situate:    U.S.A., District of Columbia, Puerto Rico and Canada.

Conditions: It is understood and agreed that Sears Roebuck & Co.,
            1633 Broadway, New York, N.Y. 10019 is included as an
            additional named Assured hereunder for their respective
            rights and interest.

            U.S.$1,000 Deductible each and every loss NMA 842.
            Condition "M" amended.
            Carriers Passenger Baggage Clause.
            10 Days Cancellation Clause.    Service of Suit Clause (U.S.A.).
            Claims Notification Clause naming Gordon Excess Coverage, Ltd.

Premium:                      U.S.$2,975.00
            Policy Fee        U.S.$    5.00

                              U.S.$2,980.00

Agent:      Gordon Excess Coverage, Ltd

Director.
25th January 1978

## APPENDIX A   PAGE -2-

EXHIBIT "A"

JEWELLERS BLOCK POLICY

SCHEDULE OF PROPERTY AND AMOUNTS INSURED

_D.S./.../_   EXHIBIT. _D -1_
DATED _8./.1/82_   _/2.1.8_
CARLA PANOS

Assured:   JET SETTING SERVICE CORP.

1.     The schedule of property and amounts insured is as follows:-

(a)    U.S.$100,000          on Stock (and other peoples goods)

(b)    No Liability          on Money in locked safes.

(c)    No Liability          on Patterns, Moulds and Dies.

(d)    No Liability          on Furniture, Fixtures, Fittings, Machinery,
                             Tools and equipment.

(e)    No Liability          on Improvements and Betterments.

2.     Limitations of Liability in respect of the property insured under
       item 1(a) above.

       The maximum liability of Underwriters resulting from any one
       loss, disaster or casualty is limited to:-

(a)    U.S.$100,000          in respect of property at the Assured's premises
                             described herein.

(b)(i) No Liability          in respect of property in transit by an armoured
                             car service.
  (ii) No Liability          in respect of property deposited in the safe
                             or vault of a bank or safe deposit company.
 (iii) No Liability          in respect of property in the custody of a
                             dealer in property of the kind insured hereunder
                             not employed by or associated with the Assured,
                             but property deposited for safe keeping with
                             such a dealer by the Assured or his or their
                             authorised representatives while travelling is
                             subject to the limit expressed in Clause (e)
                             of this Section.

(c)    No Liability          in respect of shipments by first classs registered
                             air mail or air express (subject to the stipulations
                             of Exclusion (e) of Section 5 of the policy)
                             sent to any one addresse at any one address
                             during any one day.

(d)    No Liability          in respect of shipments in transit by customer
                             parcel delivery service and the parcel transportation
                             service of railroads, waterborne or air carriers
                             and passenger bus lines (subject to the stipulations
                             of Exclusion (e) of Section 5 of the policy).

(e)    U.S.$ 25,000          in respect of property elsewhere and not
                             included in Clauses (a), (b), (c) and (d) of
                             this Section or otherwise limited in the Cover
                             Note.

## APPENDIX A   PAGE -3-

14.03% Lloyd's Syndicate No. 640

| | | | |
|---|---|---|---|
| 1.52% | " | " | " | 869 |
| 6.87% | " | " | " | 811 |
| 1.72% | " | " | " | 971 |
| 5.50% | " | " | " | 10 |
| 7.10% | " | " | " | 15 |
| 6.60% | " | " | " | 506 |
| 3.19% | " | " | " | 484 |
| 3.82% | " | " | " | 918 |
| 3.19% | " | " | " | 727 |
| 2.55% | " | " | " | 287 |
| 3.19% | " | " | " | 92 |
| 2.55% | " | " | " | 707 |
| 1.27% | " | " | " | 65 |
| 2.06% | " | " | " | 47 |
| 3.83% | " | " | " | 404 |
| 0.48% | " | " | " | 14 |
| 2.00% | " | " | " | 725 |
| 1.00% | " | " | " | 299 |
| 2.50% | " | " | " | 164 |
| 3.31% | " | " | " | 109 |
| 3.80% | " | " | " | 112 |
| 2.00% | " | " | " | 33 |
| 0.63% | " | " | " | 33 |
| 4.01% | " | " | " | 419 |
| 1.00% | " | " | " | 471 |
| 2.50% | " | " | " | 510 |
| 1.00% | " | " | " | 780 |
| 2.87% | " | " | " | 56 |
| 1.91% | " | " | " | 210 |
| 1.66% | " | " | " | 668 |

## APPENDIX B

**Debit
Note**
JB7805821448

# Halford, Shead
# & Company

Registered Office
22 Billiter Street
London EC3M 2SA

Telephone 01 488 0808
Telegrams Howden London EC
International Telex 882171

Lloyd s Brokers

VAT Regd No 244 3708 67

Your reference

Our reference    BME/AC

28th November, 1978

We confirm having arranged the following insurance with:    100% Underwriters
at Lloyds.

**Type:**        JEWELLERS BLOCK POLICY.

**Form:**        O(L) Proposal Form dated: 14th November, 1978

**Assured:**     JET SETTING SERVICE CORP.,
10th Floor, 25 West 45th Street,
New York,
N.Y.

**Period:**      16th November, 1978 for 12 months.

**Interest:**    Stock and/or interest as per policy.

**Sum Insured:**    Section 1.A. U.S.$ 50,000
B. No Liability
C. No Liability
D. No Liability
E. No Liability

Section 2.A. U.S.$ 50,000
B. No Liability
C. No Liability
D. No Liability
E. U.S.$ 10,000

**Situate:**     U.S.A., District of Columbia, Puerto Rico and Canada.

**Conditions:**    It is understood and agreed that Sears Roebuck & Co.,
1633 Broadway, New York, N.Y. 10019 is included as an
additional named Assured hereunder for their respective
rights and interest.

U.S.$1,000 Deductible each and every loss (NMA 842).
Condition "M" amended.
Carriers Passenger Baggage Clause.
10 Days Cancellation Clause.    Service of Suit Clause (U.S.A.).
Claims Notification Clause naming

**Premium:**                       U.S.$1,384.00
Policy Fee            5.00
U.S.$1,389.00

MANNY NUSSBAUM
ALL FORMS OF INSURANCE
55 West 42nd Street  New York, N.Y. 10036
695-7330

Director.

Halford Shead & Company is a registered business name of
Alexander Howden Insurance Brokers Limited which is
a member of the Alexander Howden Group of Companies

AH 0048

EGOE

Registered in London 210725

APPENDIX B   PAGE -2-

JEWELLERS BLOCK POLICY

SCHEDULE OF PROPERTY AND AMOUNTS INSURED

Assured:      Jet Setting Service Corp.,

1.    The schedule of property and amounts insured is as follows:-

(a)    U.S.$ 50,000        on Stock (and other peoples goods)

(b)    No Liability        on Money in locked safes.

(c)    No Liability        on Patterns, Moulds and Dies.

(d)    No Liability        on Furniture, Fixtures, Fittings, Machinery,
                           Tools and Equipment.

(e)    No Liability        on Improvements and Betterments.

2.    Limitations of Liability in respect of the property insured under
      item 1(a) above.

      The maximum liability of Underwriters resulting from any one
      loss, disaster or casualty is limited to:-

(a)    U.S.$ 50,000        in respect of property at the Assured's premises
                           described herein.

(b) (i)  No Liability      in respect of property in transit by an armoured
                           car service.
   (ii)                    in respect of property deposited in the safe
                           or vault of a bank or safe deposit company.
  (iii)                    in respect of property in the custody of a
                           dealer in property of the kind insured hereunder
                           not employed by or associated with the Assured,
                           but property deposited for safe keeping with
                           such a dealer by the Assured or his or their
                           authorised representatives while travelling is
                           subject to the limit expressed in Clause (e)
                           of this Section.

(c)    No Liability        in respect of shipments by first class registered
                           air mail or air express (subject to the stipulations
                           of Exclusion (e) of Section 5 of the policy)
                           sent to any one addresse at any one address
                           during any one day.

(d)    No Liability        in respect of shipments in transit by customer
                           parcel delivery service and the parcel transportation
                           service of railroads, waterborne or air carriers
                           and passenger bus lines (subject to the stipulations
                           of Exclusion (e) of Section 5 of the policy).

(e)    U.S.$ 10,000        in respect of property elsewhere and not
                           included in Clauses (a), (b), (c) and (d) of
                           this Section or otherwise limited in the Cover
                           Note.

**APPENDIX B   PAGE -3-**

| | | | |
|---|---|---|---|
| 14.03% | Lloyds Syndicate No | | 640 |
| 6.27% | " | " | " | 811 |
| 1.42% | " | " | " | 971 |
| 2.42% | " | " | " | 869 |
| 6.50% | " | " | " | 10 |
| 7.10% | " | " | " | 15 |
| ·6.60% | " | " | " | 506 |
| 3.19% | " | " | " | 484 |
| 3.82% | " | " | " | 918 |
| 3.19% | " | " | " | 727 |
| 2.55% | " | " | " | 287 |
| 3.19% | " | " | " | 92 |
| 2.55% | " | " | " | 707 |
| 1.27% | " | " | " | 65 |
| 2.06% | " | " | " | 47 |
| 3.83% | " | " | " | 404 |
| 0.48% | " | " | " | 34 |
| 2.00% | " | " | " | 725 |
| 1.00% | " | " | " | 299 |
| 2.50% | " | " | " | 164 |
| 3.31% | " | " | " | 109 |
| 3.80% | " | " | " | 112 |
| 2.63% | " | " | " | 33 |
| 4.01% | " | " | " | 416 |
| 1.00% | " | " | " | 471 |
| 2.50% | " | " | " | 510 |
| 1.00% | " | " | " | 780 |
| 2.87% | " | " | " | 56 |
| 1.91% | " | " | " | 210 |
| 1.00% | " | " | " | 868 |