OPINION OF THE COURT
Doris Ling-Cohan, J.
Motion denied, except with respect to the branch of the motion seeking to dismiss the claims against defendant Manham in his individual capacity, for the reasons set forth below.
Background
Plaintiffs, Kurt Wayne, Inc. and Kristina, businesses engaged in the manufacturing, importing and sale of jewelry, bring this action against defendants, Underwriters at Lloyds London, Elan Manham and Associated International Brokers, Inc. (AIB), to recover the sum of approximately $1.6 million, representing the value of jewelry stolen from plaintiffs’ premises in New York, New York, on December 31, 2004. Plaintiffs are seeking coverage pursuant to a jeweler’s block insurance policy which they procured from the Lloyds Underwriters, through defendants Manham and AIB, who served as their insurance brokers. The policy at issue was in effect from March 15, 2004 through March 15, 2005, and provided coverage for merchandise up to a limit of $6.5 million (affirmation of Steven L. Young, Esq. in support of motion, exhibit A). In a letter dated May 10, 2005, the adjuster retained by the Lloyds Underwriters to investigate the claim notified plaintiffs that loss could come within the “out of safe clause” in one of the policy endorsements, which provides as follows, in pertinent part: “It is understood and agreed that coverage under Limitation of liability 2 (a) for property insured kept out of the Assured’s locked safe(s), but within Assured’s locked stockroom/vault during non-business hours is limited to US $300,000.00 any one loss or occurrence.” (Young affirmation in support, exhibit B.) Accordingly, Underwriters has agreed to pay plaintiffs the sum of $275,000, representing the limit in the out of safe clause, less the $25,000 deductible, while reserving their right to continue to audit and investiga! e the claim (id.). In connection with their investigation, the Lloyds Underwriters examined Manham and Gerald and Steven Wayne, principals of plaintiffs, under oath in December 2005 (affirmation of Jody C. Benard in opposition to motion, exhibits B, C, D).
In March 2006, plaintiffs commenced the instant action, asserting claims against defendants AIB and Manham, sounding in negligence, and against defendant Lloyds Underwriters for *616 breach of contract (Young affirmation in support, exhibit A). Prior to serving an answer, defendants AIB and Manham have moved to dismiss the complaint pursuant to CPLR 3211 (a) (5), as time-barred by the statutes of limitations for both negligence and breach of contract, and pursuant to CPLR 3211 (a) (7), asserting the complaint fails to state a cause of action. In addition, defendant Manham seeks to dismiss the claims asserted against him in his individual capacity, as he was acting at all relevant times as an officer of AIB.
Discussion
Statute of Limitations
Defendants AIB and Manham argue that the first two causes of action asserted against them in the complaint are time-barred. These causes of action allege that the above defendants were negligent, in failing to place the coverage that plaintiffs had purportedly requested for merchandise left overnight outside of locked safes, and in failing to notify plaintiffs that they had not obtained the requested coverage (Young affirmation in support, exhibit D). According to defendants, the three-year limitations period for the negligence claims, prescribed by CPLR 214 (4), accrued when the insurance policy, containing the out of safe clause, was issued, not when plaintiffs were notified that a large proportion of their loss may be excluded by this clause (see Mauro v Niemann Agency, 303 AD2d 468, 469 [2d Dept 2003]; Polly Esther’s S., Inc. v Setnor Byer Bogdanoff, Inc., 10 Misc 3d 375, 394-395 [Sup Ct, NY County 2005, Ramos, J.]). Even assuming, for the sake of argument, that the causes of action asserted against defendants sound in breach of contract, the applicable six-year limitations period prescribed by CPLR 213 (2) accrued when the policy was procured and issued (see St. George Hotel Assoc. v Shurkin, 12 AD3d 359, 360 [2d Dept 2004]).
Significantly, neither defendants nor plaintiffs cite any decisions concerning the limitations period applicable to jeweler’s block policies. According to defendants, the limitations periods for both negligence and breach of contract accrued in or about May 1999, when the out of safe clause at issue was incorporated into the first policy issued by the Lloyds Underwriters to plaintiff Wayne (Young affirmation in support, exhibit C), not in or about March 15, 2004, when the policy in effect at the time of the loss was issued. Defendants emphasize the fact that the Lloyds Underwriters issued successive one-year policies to plaintiffs, beginning in 1999, all of which contained the identi *617 cal out of safe clause. Indeed, defendants characterize all of the jeweler’s block policies they procured for plaintiffs after 1999 as “renewal policies” (defendants’ mem of law in support at 4).
Plaintiffs, however, emphasize that the jeweler’s block policy is a specialized type of insurance policy, originally developed by the Lloyds Underwriters to serve the specific coverage needs of the jewelry industry (see Woods Patchogue Corp. v Franklin Natl. Ins. Co. of N.Y., 5 NY2d 479, 482-483 [1959]; Jet Setting Serv. Corp. v Toomey, 91 AD2d 431 [1st Dept 1983]; Falcon Crest Diamonds v Dixon, 173 Misc 2d 450 [Sup Ct, NY County 1996]). Plaintiffs annex the transcripts of the examinations under oath of defendant Manham and Gerald and Steven Wayne, principals of Wayne and Kristina, describing the process leading to the issuance of the jeweler’s block policies. Manham characterized the jeweler’s block policy as “a tailor-made policy which takes care of most, if not all, of the requirements of the [jewelry] industry. . . . It’s an all-risk policy and it, among other things, covers as a general rule stock on premises, stock in transit, stock on memorandum, stock while being shipped, so on and so forth” (Benard affirmation in opposition, exhibit B, Manham transcript, at 69-70). He further noted that jeweler’s block policies contain standard coverage forms, as well as individualized provisions tailored to the specific coverage needs of each insured (id. at 73-76).
Mr. Manham then described, in detail, the process of visiting the client on the insured premises to discuss the risks to be insured, in order to complete a proposal to be typed up and sent to the London broker, in order to procure the jeweler’s block policy from the Lloyds Underwriters for each successive policy year (id. at 85-88). Manham discusses the premium quote obtained by the London broker from the Lloyds Underwriters with the insured and he notes that, frequently, the insureds seek changes in the proposal to reduce the premium. Manham explained:
“We can perhaps increase the deductible, we can reduce the coverages, we can do a combination of both. Several changes can go into the making of reducing [sic], or conversely he [the insured or client] may have forgotten to tell me certain things at the initial meeting which he subsequently remembered. He may want to include certain things that were optional to begin with. So, there’s quite a lot of back and forth before we actually consummate *618 the deal. Once we have all the details and we agree on all the points, he signs it and that gets submitted to London.” (Manham transcript at 89-90.)
After Manham reaches an agreement with the insured on the coverage and premium desired, he submits the approved proposal to the London broker, who obtains a “cover” or “cover note” from the Lloyds Underwriters. Mr. Manham explained:
“A cover is a contract that is issued between the London broker and the underwriters, set of underwriters, where you would have one or two leads and they would agree that if the two leads see a particular risk and they agree to a particular risk, they are able to bind the balance of the members of the contract.” (Id. at 103; see also Young affirmation in support, exhibit A [copy of cover note for policy issued to plaintiffs in effect from Mar. 15, 2004 through Mar. 15, 2005]; Jet Setting Serv. Corp. v Toomey, 91 AD2d 431 [1983] [Appendix A showing sample of Lloyds cover notes].)
Manham then receives a confirmation of coverage from the London broker, summarizing the policy provisions and the premium, which he checks to verify that they accurately reflect the proposal approved by the insured (Manham transcript at 109-120). Mr. Manham noted that there were changes to the coverages and premiums in the policies issued to plaintiffs during the period from 1999 until 2004 (Manham transcript at 250-253). Indeed, the documents from the cover notes and policies issued to plaintiffs during the period from 1999 until 2004 reveal different policy and cover note numbers, different syndicates of Lloyds Underwriters subscribing to each policy and cover note, different coverage provisions and different premiums charged for each policy period (reply affirmation of Steven Young, Esq., exhibit A).
Accordingly, the jeweler’s block policies issued to plaintiffs, which are negotiated and placed with the Lloyds Underwriters anew for each successive year, differ materially from the automatic renewals of standard form insurance policies issued by a single insurance company, involved in the decisions cited by defendants (see, e.g. Mauro v Niemann Agency, 303 AD2d at 468-469 [insured’s breach of contract and negligence claims action against broker for failure to procure adequate uninsured and supplementary uninsured motorist coverage in automobile policy accrued when insurance policy was first issued]). Therefore, the limitations period for plaintiffs’ claims against *619 defendants AIB and Manham accrued when the policy in effect from March 2004 through March 2005 was issued, rather than when defendants first procured jeweler’s block coverage for plaintiffs in 1999 (see Vic Char Realty, Inc. v Alliance Plus, Inc., 26 AD3d 278, 279 [1st Dept 2006] [insured’s breach of contract claim against broker for failing to secure adequate property insurance not time-barred, as claim accrued when broker obtained replacement cost insurance, notwithstanding fact that same error had been made earlier by the broker when it procured different coverage for the plaintiff]). Plaintiffs’ claims against defendants AIB and Manham are, thus, timely, regardless of whether they are governed by the three-year limitations period for negligence or the six-year limitations period for breach of contract.
Dismissal for Failure to State a Cause of Action
Defendants seek to dismiss plaintiffs’ claims for failure to state a cause of action, based upon the general principle that an insured is presumed to have read and understood the terms of an insurance policy (see, e.g. McGarr v Guardian Life Ins. Co. of Am., 19 AD3d 254, 256 [1st Dept 2005]; Busker on Roof Ltd. Partnership Co. v Warrington, 283 AD2d 376, 377 [1st Dept 2001]). Nevertheless, the allegations in the complaint against defendants AIB and Manham, which are accepted as true and are accorded the benefit of every possible favorable inference (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]), state a cause of action. Further, although a court may consider affidavits submitted by the plaintiff on a motion to dismiss pursuant to CPLR 3211 (a) (7), it may do so only to remedy defects in the complaint (Leon at 88).
In essence, by requesting this court to consider extrinsic evidence, including affidavits, defendants are seeking summary judgment. Even if this court exercises its discretion to treat this as a summary judgment motion, after providing the parties with appropriate notice pursuant to CPLR 3211 (c), summary judgment is premature at this preliminary stage of the litigation, prior to the filing of an answer and the completion of any discovery (see CPLR 3212 [f]; George v New York City Tr. Auth., 306 AD2d 160 [1st Dept 2003]; Arez v Twin Parks Northeast Houses, 294 AD2d 266, 267 [1st Dept 2002]; Schachat v Bell Atl. Corp., 282 AD2d 329, 330 [1st Dept 2001]; Esposito v Metropolitan Transp. Auth., 264 AD2d 370 [1st Dept 1999]). The transcripts of the examinations of the parties submitted by plaintiffs indicate that there are many factual issues which *620 must be resolved. For example, a significant amount of the merchandise stolen on December 31, 2004 was not locked in a safe but, rather, was stored on carts in a locked room on the premises (Benard affirmation in opposition, exhibit D, S. Wayne transcript at 37-40). When defendants AIB and Manham first obtained jeweler’s block insurance for plaintiffs in 1999, they sent an individual to conduct a survey of the premises into which plaintiffs had recently moved, in order to assist the Lloyds Underwriters in evaluating the risks to be covered (Manham transcript at 153-154). The out of safe clause at issue was agreed to by the Lloyds Underwriters based, to a large extent, upon this survey (id. at 154-155; Young affirmation in support, exhibit C). Manham admits in his testimony, however, that he did not discuss this clause with the London broker, despite the fact that it differed from the standard out of safe clause (Manham transcript at 318-320).
Further, Gerald Wayne, the president of defendant Wayne, asserts in his affidavit, that Manham knew how the merchandise was stored in the area outside of the safe, and that Manham had specifically advised him how to store this merchandise on carts and told him it would be covered up to the policy limit of $6.5 million (affidavit of Gerald Wayne in opposition to motion at 1111 8-10). Nevertheless, transcripts of the parties’ testimony annexed to plaintiffs’ opposition papers appear to be inconsistent with this version of the events. For example, although Gerald Wayne indicated that he had discussed the out of safe clause with Manham prior to the loss, he was very vague about the contents of this conversation and when it took place (Benard affirmation in opposition, exhibit C, G. Wayne transcript at 90-95). Further, Gerald Wayne stated that he was not involved with the 1999 survey of the premises and his description of the coverage that Manham allegedly advised him he would have, pursuant to the out of safe clause, is based upon diagrams of the premises not included in the record on this motion (id. at 82, 46-49, 61-63). Steven Wayne, Gerald’s brother, stated that he walked the individual conducting the survey through the premises in 1999. Steven Wayne stated, however, that he never told the surveyor about the need for insurance coverage of merchandise left outside of the safes overnight (S. Wayne transcript at 32-37).
Accordingly, in view of the numerous factual issues which must be resolved in this litigation, defendants’ motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) is denied.
*621 Dismissal of Claims Asserted against Manham in His Individual Capacity
Defendant Manham seeks to dismiss the claims asserted against him in his individual capacity, as he allegedly acted at all times as an officer, in this case the president, of defendant AIB (Manham transcript at 46). Defendants emphasize the fact that the complaint contains no allegations to support the contention that Manham intended to become personally liable to plaintiffs to procure insurance coverage (defendants’ mem of law in support of motion to dismiss at 12). Instead, as stated in his affidavit, Manham took any and all of his actions as the insurance broker for plaintiffs in his capacity as the president of AIB. Plaintiffs do not set forth any facts to dispute this. Accordingly, the branch of defendants’ motion which seeks to dismiss the claims asserted against Manham in his individual capacity is dismissed.
Accordingly, it is ordered that the motion of defendants AIB and Manham to dismiss the complaint is denied, except with respect to the branch of the motion seeking to dismiss the claims against defendant Elan Manham in his individual capacity, which is granted.