WRIGHT, Presiding Judge.
This was a suit for declaration of coverage of an insurance policy.
The trial court held for the insured. The insurer appeals, asserting three main errors: (1) that the court incorrectly determined the real estate agent endorsement in its policy with the insured to be ambiguous; (2) that the court incorrectly allowed the policy to be reformed; and (3) that the court incorrectly held the insurer estopped from denying coverage. We affirm the court’s order requiring the insurer to defend the wrongful death action filed against the insured arising out of an accident which the court determined the policy to cover. We accordingly affirm the award of damages to the insured for legal fees already expended in defense of that suit.
We note at the outset that the normal presumption applies to the ore tenus proceedings in this case — that is, that the court’s findings will not be disturbed on appeal unless they are unsupported by credible evidence or are found to be plainly and palpably wrong. Alliance Insurance Company v. Reynolds, 494 So.2d 609 (Ala.1986).
The material facts are as follows: The insured is a real estate company whose business includes leasing apartments. The insured sought a new insurance company to provide a comprehensive business policy for business liability purposes. The discussions between the insured and the insurer’s agent over the coverage to be provided by the appellant continued over more than a month’s time. The record shows that the agent thought he was selling insurance to the insured with the coverage as stated in the prior policy without exclusion. On the basis of the understanding reached between the insured and the insurer’s agent with respect to the coverage in question, the insured purchased a policy for business liability purposes from the appellant.
The insured’s old policy contained the following endorsement (i.e., exclusion):
“It is agreed that the insurance applies only to bodily injury or property damage arising out of the ownership, maintenance or use of:
“(2) premises listed with the Insured for sale or rental, provided that such premises are not owned, operated, managed by, rented to, or in the care, custody, or control of the Insured, or as to which the Insured acts as agent for the collection of rents or in any supervisory capacity.”
This exclusion, known as a real estate agent’s endorsement, was overridden by another of the policy’s provisions, which stated:
“It is understood and agreed that Endorsement G409 — Real Estate Agents— is amended as follows:
“This exclusion shall not apply to liability arising out of construction and maintenance work performed by the Insured, on premises managed by the Insured, where .a fee is charged to the owner for supervision of such work, or where the work is performed by independent contractors.” [Emphasis ours.]
When the insured obtained new insurance from the appellant-insurer (not the same company which issued the policy referred to above), the insurer’s agent was well apprised by the insured, as the record makes clear, that it wanted a policy providing the same coverage as contained in the prior policy. Voluminous testimony, both by the insured and the insurer’s agent, leaves little doubt that those two parties understood the new policy issued by the appellant to provide such coverage as that quoted above — that is, that the policy would cover construction and maintenance work performed by the insured on premises it managed, or where work was performed by independent contractors.
The new policy, as issued, contained a real estate agent endorsement identical to the one in the old policy. It did not contain an identical amendment to that exclusion, such as was found in the old policy, but it did state two categories of express coverage entitled, “Independent Contractors” and “Completed Operations.” Premiums were paid by the insured for that coverage.
*1128 The accident which gave rise to the subject of this appeal occurred on premises managed by the insured. The insurer’s agent testified that he thought the new policy covered the accident since the injuries were sustained in premises with respect to which the insured had undertaken to make repairs to the electrical system, and since the job was to be performed for the insured by an independent contractor. Clearly, such an accident would have been covered under the provisions of the insured’s old policy.
Suit was filed against the insured for the deaths and injuries resulting from the accident. The insurer denied coverage and refused to defend the insured in the action brought against it. The trial court held in favor of the insured, stating the following in its judgment:
“Specifically, the Court finds that the language of the endorsement in question is ambiguous and that its application to the coverages of ... [work done by independent contractors on premises managed by the insured] is ambiguous. Second, the Court finds that it was the intent of both Watts and Fidelity at the time of purchase that the policies in question provide coverage for Watts’ operations, including the very type of claim made the basis of the underlying lawsuit. Third, the Court finds that Watts specifically requested coverage for its specific operations, that Fidelity knew the extent of those operations and promised Watts coverage for same and that Watts relied on that promise. Finally, the Court finds that Fidelity charged Watts a separate premium for the very coverage that Fidelity would now have this Court find to be non-existent. Fidelity is, therefore, estopped to make such a claim.”
As the trial court so well stated, there is little merit to the insurer’s argument that the insured is not covered in this instance. Similarly, the insurer’s assertions of error on this appeal lack such weight as to overcome the presumption of correctness of the ore tenus proceeding. Indeed, a recent supreme court decision concisely states the principle which governs this case:
“Exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it.”
Reynolds, supra, at 612. Williston explains the rationale for such a principle as follows:
“The fundamental reason which explains this and other examples of judicial predisposition toward the insured is the deep-seated, often unconscious but justified feeling or belief that the powerful underwriter, having drafted its several types of insurance ‘contracts of adhesion’ with the aid of skillful and highly paid legal talent, from which no deviation desired by an applicant will be permitted, is almost certain to overreach the other party to the contract. The established underwriter is magnificently qualified to understand and protect its own selfish interests. In contrast, the applicant is a shorn lamb driven to accept whatever contract may be offered on a ‘take-it-or-leave-it’ basis if he wishes insurance protection. Thus understood, the judicial attitude is not only understandable but commendable.”
S. Williston, A Treatise on the Law of Contracts, § 900 at 19 (3d ed. 1963).
Regarding appellant’s contentions that the trial court incorrectly found the policy to be ambiguous, thereby reforming it, and incorrectly held the insurer estopped from denying coverage, the law is clear. Although it is true that a court cannot construct a new agreement for the parties, Day v. Home Insurance Company, 177 Ala. 600, 58 So. 549 (1912), it is also true that where a clause, read in connection with the entire policy, is ambiguous, that construction which is most favorable to insured will be adopted. Empire Life Insurance Company v. Gee, 178 Ala. 492, 60 So. 90 (1912). The ore tenus findings of the court on the issues of ambiguity and refor *1129 mation of the policy are overwhelmingly supported by the record.
Regarding appellant’s contention that it cannot be estopped from denying coverage, the law in Alabama states otherwise. As we held in St. Paul Fire and Marine Insurance Company v. Air Comfort Engineers, Inc., 47 Ala.App. 301, 253 So.2d 525, 531 (1971):
“One may waive an exclusion, right of forfeiture or other defense afforded by the terms of a contract or policy of insurance, or by conduct opposed to the exercise of such rights be prevented by the doctrine of estoppel from raising them in defense of a suit by another contracting party, but if there was no contract out of which a cause of action could arise, one may not by the theory of waiver or es-toppel be prevented from so pleading.”
There was a contract in this case, and the record supports the court in its determination that the conduct, understanding and expressed intent of the insurer’s agent upon which the insured relied estops the insurer from denying coverage.
The judgment is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.