This Court agreed to answer the following questions certified by the United States District Court for the Middle District of Alabama, the Honorable Ira DeMent presiding:
 "(1) In a breach of contract action when an insurer fails to deliver a copy of the policy to an insured in accordance with Ala. Code 1975, § 27-14-19, but does provide a certificate of insurance which sets out the general coverage without enumerating the limitations and exclusions,[1]
is the insurer estopped from asserting an otherwise valid exclusion?
 "(2) Would it alter the opinion of the Court if, in addition to the above facts, the insurer's agent made representations to the insured that the insured had full coverage under the policy, upon which [representations] the insured relied to its detriment?"
As phrased, the certified questions ask this Court to decide an abstract question of law. Unfortunately, the parties here have, for the most part, focused their arguments on the facts of the case rather than on the wisdom of adopting any of the various answers to this abstract question. Basically, the question is, if all facts are as the plaintiff alleges: Is there a theory upon which the plaintiff may recover in this case? Specifically, whether an exception to our long-standing rule against enlarging the coverage of an insurance policy by estoppel should be created to give effect to the statutory requirement that an insurer deliver a copy of an insurance policy to the insured. The certification of a question of law does not place this Court in a position to decide questions of fact. The defendants' motions for summary judgment are pending in the Federal court. The resolution of factual questions necessary to reach the certified questions is therefore assumed to be in the plaintiff's favor, and we set out *Page 53 
the essentially uncontested facts of the case merely to provide a context within which our answer may be understood.
In June 1991, Brown Machine Works Supply Company, Inc. ("Brown"), the owner of a 1973 Cessna 421 aircraft, entered into a contract with Texas Corporate Aircraft Sales, Inc. ("TCAS"), under which TCAS would attempt to sell the aircraft. The parties agreed that TCAS would take possession of the aircraft in exchange for a check in the amount of $100,000 — post-dated to October 15, 1991. The parties agreed that if the aircraft was not sold within 120 days, then Brown would accept the check as payment in full for the aircraft.
The parties also agreed that TCAS would provide insurance on the aircraft while it was in the possession of TCAS. TCAS had a "blanket policy" with Insurance Company of North America ("INA") on all the aircraft it possessed. Coverage under that policy for Brown's Cessna 421 was issued by INA and was secured through Bodi Wachs Aviation Insurance Agency ("Bodi 
Wachs").
On June 5, 1991, Brown received a copy of a certificate of insurance issued by Bodi Wachs on behalf of INA. The certificate stated, in pertinent part, the following:
 "Brown Machine Supply Company is named as the owner/lessor and additional insured only as respects the operations of the named insured effective 6/6/91.
 "Certificate of Insurance does not amend, extend, or otherwise alter the terms and conditions of insurance coverage contained in policies listed above issued by Insurance Company of North America."
The certificate also has "All Risks" printed under the "Aircraft Physical Damage" designation of the type of policy and lists the corresponding "Limits of Liability" as being "Not Less Than . . . $105,000 Value Insured."
It is undisputed that Brown did not obtain a copy of the policy of insurance until after Brown had filed a complaint against INA and Bodi Wachs. In October 1991, Brown discovered that TCAS, by forging a certificate of title to the aircraft, had sold it to a third party. Brown then attempted to cash the $100,000 check, but TCAS had stopped payment on it.
Brown began to inquire whether the policy issued by INA provided theft coverage. The parties dispute when and if a representative of Brown actually spoke with a representative at Bodi Wachs. The parties also dispute whether a representative at Bodi Wachs informed Brown that it had coverage for the theft of its aircraft. On July 22, 1992, Brown filed a claim with INA for coverage under the policy's theft provision. The policy INA had issued to TCAS had been cancelled in October 1991 for nonpayment of premiums. INA rejected Brown's claim, asserting that the policy did not provide for theft coverage to Brown as an additional insured and that, even if it did, exclusion 12 of the policy excluded coverage for "conversion."[2] The parties dispute whether TCAS's illegal sale of the aircraft constituted conversion or theft.
Brown argues that because INA failed to deliver a copy of the insurance policy to it, INA cannot now assert exclusions of which Brown did not have notice. Neither this Court nor the Alabama Legislature has addressed the effect an insurer's failure to deliver a policy to an insured has on the insurer's right to assert an otherwise applicable exclusion in the policy.
 I.
We begin our analysis by noting that, although the parties have not mentioned it, the general rule in Alabama is that "coverage under an insurance policy cannot be enlarged by waiver or estoppel." Johnson v. Allstate Ins. Co.,505 So.2d 362, 365 (Ala. 1987); see *Page 54 Home Indem. Co. v. Reed Equip. Co., 381 So.2d 45, 50-51
(Ala. 1980) (holding that, where there is no ambiguity in an insurance contract, coverage under the policy cannot be created or enlarged by waiver or estoppel so as to bring within the coverage of the policy risks not covered by its terms or risks expressly excluded therefrom); Woodall v. Alfa Mutual InsuranceCo., 658 So.2d 369 (Ala. 1995). If the general rule governs this case, then it is clear that the plaintiff will be bound by any applicable exclusions of insurance coverage found in the INA/TCAS policy. The Legislature, however, has enacted a statutory provision declaring that an insurer must deliver a policy of insurance to the insured. Section 27-14-19, Ala. Code 1975, provides:
 "(a) Subject to the insurer's requirements as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance, except where a condition required by the insurer has not been met by the insured."
There are no cases interpreting or otherwise citing § 27-14-19. Thus, whether the failure to comply with the mandate of the statute may be a ground upon which to estop an insurance company from asserting an otherwise valid exclusion is a question of first impression.
Other jurisdictions have held that an insurer may be estopped to deny coverage based on an insured's failure to comply with a notice requirement or based on an exclusion in the policy, if the insurer did not provide a copy of the policy to the insured. See generally Thomas M. Fleming, Annotation, Insurer'sDuty, and Effect of its Failure, to Provide Insured or Payeewith Copy of Policy or Other Adequate Documentation of itsTerms, 78 A.L.R.4th 9 (1990). Louisiana statutes and cases address the precise question at issue here. Louisiana adheres to the rule that generally estoppel cannot be used to enlarge the coverage of an insurance contract beyond what is set out in the policy. Ledoux v. Old Republic Life Ins. Co.,233 So.2d 731, 735 (La.App.), cert. denied, 256 La. 372, 236 So.2d 501
(1970) (citing H.D. Foote Lumber Co. v. Svea Fire Life Ins.Co., 179 La. 779, 155 So. 22 (1934); Loubat v. Audubon LifeIns. Co., 248 La. 183, 177 So.2d 281 (1965)); see GrahamResources, Inc. v. Lexington Ins. Co., 625 So.2d 716
(La.App. 1993), cert. denied, 631 So.2d 1164 (La. 1994); Hunter v.Office of Health Services, 385 So.2d 928 (La.App.), cert.denied, 393 So.2d 737 (La. 1980). Additionally, Louisiana's code includes a provision requiring that an insurer deliver an insurance policy to the insured; that provision is virtually identical to Alabama's. See La.Rev.Stat.Ann. § 22:634 (West 1978) ("every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance").
In Louisiana Maintenance Services, Inc. v. CertainUnderwriters at Lloyd's of London, 616 So.2d 1250 (La. 1993), the Supreme Court of Louisiana held that an insurer could not rely on its policy exclusions where it had failed to comply with the statutory requirement of delivering the policy to the insured. Id. at 1253. Louisiana Maintenance Services ("LMS") purchased a comprehensive general liability insurance policy from Lloyd's through an agent. LMS received a confirmation of third-party general liability coverage from Lloyd's, but neither LMS nor the agent received a copy of the insurance policy. Based upon a policy exclusion, Lloyd's denied coverage for an incident in which an employee of LMS had negligently damaged a piece of leased equipment. The Louisiana court interpreted the statute as requiring that an insured be informed of a policy's coverage. Id. at 1252. The court stated that "[n]otice of any exclusionary provisions is essential because the insured will otherwise assume the desired coverage exists," and it ultimately held that "[i]nsurance policy exclusions are not valid unless clearly communicated to the insured." Id. at 1252-53.
The law of Georgia is also closely on point. As a general matter, it appears that the doctrine of equitable estoppel can be asserted by an insured "against [an insurance company's assertion of] a right which it may have under the policy," where the insured is "actually ignorant of the contents of the policy." Union Fire Ins. Co. v. Stone, 41 Ga. App. 49,152 S.E. 146, 147 (1930). Further, the Georgia *Page 55 
Legislature has adopted a statutory delivery requirement substantially identical to that imposed by Ala. Code 1975, §27-14-19. See Ga. Code Ann. § 33-24-14 (Michie 1990) ("every policy shall be mailed or delivered to the insured or to the person entitled to the policy within a reasonable period of time after its issuance"). This Georgia provision, however, has not been interpreted, or otherwise cited, by the state's appellate courts, and the cases construing its statutory predecessors are inapposite. The Georgia Court of Appeals has held, though, without reference to the delivery statute, that, where a fleet policy was issued almost three years before the incident upon which a claim for coverage was based and where renewal policy declarations indicated the policy number, the insured "had notice of the existence of the actual policy as a matter of law and his non-receipt or non-possession of the policy would not serve to excuse him from its operative terms."Southern Trust Ins. Co. v. Georgia Farm Bureau Mut. Ins. Co.,194 Ga. App. 751, 391 S.E.2d 793, 795 (1990).
The Georgia appellate courts have interpreted a more specific statutory provision requiring that an individual policy be delivered to the insured for all credit life insurance and credit accident and sickness insurance and that a group certificate of insurance be delivered to the insured in the case of group insurance. See Ga. Code Ann. § 33-31-7(a) (Michie 1990). In Investor's Nat'l Life Ins. Co. v. Norsworthy,160 Ga. App. 340, 287 S.E.2d 66 (1981), the Georgia Court of Appeals addressed the statutory predecessor to § 33-31-7, stating:
 "In order for the appellant insurance company to rely on the exclusions in its [group credit life and accident and sickness insurance] policy, it must show that the certificate of insurance was delivered or that the insured otherwise had notice and therefore assented to the terms of the master policy excluding coverage for preexisting conditions."
Id., 160 Ga. App. at 341, 287 S.E.2d at 67-68. The court held that the insurer's complying with the statute by delivering a certificate of insurance to the insured would put the insured on notice of any exclusions contained in the master policy.Id., 160 Ga. App. at 341, 287 S.E.2d at 67. The court reasoned that the certificate contained a disclaimer stating that it was not the whole contract and apprised an insured of the need to independently obtain a copy of the master policy to learn all of the provisions in the contract. Id. Therefore, because there were disputed facts relating to whether the certificate had been delivered, the court affirmed the denial of the insurance company's motion for summary judgment. Id.,160 Ga. App. at 341, 287 S.E.2d at 67. Accord, Robinson v. Volunteer State LifeIns. Co., 175 Ga. App. 292, 333 S.E.2d 171 (1985) (holding that an insurer's failure to deliver the policy or a certificate in accordance with § 33-31-7 "prevents the insurer from relying upon exclusions of which the insured debtor has no notice").
The law in Utah is consistent with the Louisiana and Georgia position on this issue. Failure to comply with a statute requiring delivery of credit life and credit accident and health policies to the insured has been held by the Utah Supreme Court to estop an insurance company from relying on an undisclosed exclusion in a credit life or disability insurance policy. General Motors Acceptance Corp. v. Martinez,668 P.2d 498 (Utah 1983). The Utah court has also extended this rule of law to automobile insurance policies, holding that "where the insurer fails to disclose material exclusions . . . and the purchaser is not informed of them in writing, those exclusions are invalid." Farmers Ins. Exchange v. Call, 712 P.2d 231,236-37 (Utah 1985). In Call, the Utah Court expressly reserved the question whether an insurance company has a duty to disclose policy provisions to "all named insureds" in addition to the purchaser. Id. at 237 n. 3.
Additionally, a Utah statute requires an insurer issuing a group insurance policy to provide for each member of the insured group a certificate containing a summary of the essential features of the insurance coverage. Utah Code Ann. § 31A-21-311 (1994). In Moore v. Energy Mut. Ins. Co.,814 P.2d 1141 (Utah App. 1991) the Court of Appeals of Utah, citing § 31A-21-311, held that, where the policy had not been provided to the insured, the insurer could not assert a *Page 56 
coverage exclusion against the insured that was not contained in the certificate of insurance received by the insured. Moore was an employee insured under a legal fees insurance plan issued to Moore's employer for the benefit of its employees. The Utah court described § 31A-21-311 as being in harmony with Utah's broad common law position that "exclusions from coverage under an insurance policy, even if clear, are ineffective unless they are communicated to the insured in writing." Id. at 1144 (citing Martinez and Call). The court also held that the certificate of insurance delivered to the insured should control over the terms of a master policy not delivered to the insured. Id.
Other states have adopted positions on this issue consistent with those of Louisiana, Georgia, and Utah. See Cal.Ins. Code § 383.5 (West 1993) (requiring that the "original or true copy" of every automobile insurance policy be delivered to each named insured or loss payee), and Espree v. Western Pioneer Ins. Co., 159 Cal.App.2d Supp. 875, 324 P.2d 749 (1958) (holding that delivery of only a certificate of insurance does not comply with § 383.5 and, therefore, that an insurance company may not enforce a condition contained in the policy but not in the certificate received by the insured); Mich.Comp. Laws Ann. §550.608 (West 1993) (requiring that an individual policy be delivered to the insured for all credit life insurance and credit accident and health insurance and that a group certificate of insurance be delivered to the insured in the case of group insurance), and Gardner v. League Life Ins. Co.,48 Mich. App. 574, 210 N.W.2d 897 (1973) (holding that an insurance company could be estopped from denying liability on an insurance policy where the insurer had failed to provide the insured with the policy as required by § 550.608); Jet SettingService Corp. v. Toomey, 91 A.D.2d 431, 459 N.Y.S.2d 751 (1983) (holding, where a certificate of insurance did not contain statutorily required language and omitted a significant coverage exclusion, that there were issues of fact precluding summary judgment for the insurer as to nonliability for coverage); Pedrick v. Commercial Union Ins. Co., 134 Misc.2d 313,511 N.Y.S.2d 194 (N.Y. Sup. Ct. 1986), aff'd as modified,132 A.D.2d 980, 518 N.Y.S.2d 533 (1987) (holding that an insurer may waive a notice provision where the policy is not furnished to the insured), accord, Guadagno v. Colonial Coop.Ins. Co., 101 A.D.2d 947, 475 N.Y.S.2d 926 (1984), AvcoInstallment Sales Co. v. Edge, 83 Misc.2d 1011, 371 N.Y.S.2d 230
(N.Y. Civ. Ct. 1975), and Conte v. Yorkshire Ins. Co.,5 Misc.2d 670, 163 N.Y.S.2d 28 (N.Y. Sup. Ct. 1957).
On the other hand, some other states either recognize only in limited circumstances an estoppel to assert an otherwise valid exclusion where the insurer has failed to deliver the policy to the insured or do not recognize the estoppel at all. Seegenerally Fleming, Annotation, supra. Illinois has adopted the first of those positions. Illinois law has been interpreted as not imposing any general positive duty for insurers to forward a copy of "agreed forfeiture conditions to the insured,"Advanced Methods, Inc. v. Grain Dealers Mut. Ins. Co.,274 F.2d 634, 637 (7th Cir. 1960); however, in John Bader Lumber Co. v.Employers Ins. of Wausau, 110 Ill. App.3d 247, 65 Ill.Dec. 792,441 N.E.2d 1306 (1982), the Illinois Appellate Court held that significant conditions affecting coverage that were not communicated to the insured could not be enforced against the insured. In John Bader a certificate of insurance was delivered to the insured, but the policy itself was not. The certificate and the actual policy contained conflicting coverage expiration provisions, and the insured relied upon the provision in the certificate. The court held that ambiguities, inconsistencies, or conflicts in insurance agreements "should be construed in favor of the insured and against the insurer," and, therefore, that the insurer could not rely upon the coverage expiration provision in the undelivered policy to deny coverage. Id.,110 Ill. App.3d at 249, 65 Ill.Dec. at 794, 441 N.E.2d at 1308.
The Illinois Appellate Court has reached a contrary result upon different facts. Where a delivered certificate of insurance was not inconsistent with the undelivered policy and the certificate contained a disclaimer stating that it was not a policy of insurance and did not in any way alter the coverage afforded by the referenced policy, the court held that the certificate would not operate to "supersede *Page 57 
and vitiate the terms of the underlying policy." Lezak LevyWholesale Meats, Inc. v. Illinois Employers Ins. Co., 121 Ill. App.3d 954, 77 Ill.Dec. 419, 420, 460 N.E.2d 475, 476 (1984);accord, Pekin Ins. Co. v. American Country Ins. Co., 213 Ill. App.3d 543, 157 Ill.Dec. 648, 572 N.E.2d 1112 (1991) (citingLezak Levy for the proposition that the delivered certificate put the parties on notice that "they were required to refer to the policy . . . to determine the extent of coverage including any exclusions"). Lezak Levy has been distinguished, however, where "there [was] an ambiguity in the party's agreement in that the policy contain[ed] significant exclusions not referenced in the certificate." International Amphitheatre Co.v. Vanguard Underwriters Ins. Co., 177 Ill. App.3d 555, 126 Ill.Dec. 808, 817, 532 N.E.2d 493, 502 (1988). We note that these Illinois cases do not refer to any statutory provisions requiring delivery of an insurance policy to the insured.
The Tennessee Supreme Court has entertained the argument that an insurance company should be estopped from relying upon an exclusion that was left out of a memorandum of insurance delivered to the insured where the actual policy was not delivered to the insured. See Provident Washington Ins. Co. v.Reese, 213 Tenn. 355, 373 S.W.2d 613 (1963). The Court held, however, that the reliance element of estoppel was lacking, because the insured did not read the memorandum of insurance until after the event upon which the claim for coverage was based had occurred. Id., 213 Tenn. at 361, 373 S.W.2d at 615. Additionally, the court noted that the memorandum contained a disclaimer stating that the memorandum was for informational purposes only and neither conferred any rights on the insured nor imposed any liability on the insurer. Id.,213 Tenn. at 362, 373 S.W.2d at 616.
Finally, we note that a United States district court applying New Jersey law has held that the lack of delivery of a master policy does not estop the insurer from binding the insured by the policy's terms where an unambiguous memorandum of insurance was delivered to the insured that put the insured "on notice that her rights under the insurance policy could be determined only with reference to the actual master policy".Vandermeulen v. Allstate Ins. Co., 734 F. Supp. 664, 666
(D.N.J. 1990).
We find that the clear weight of the persuasive authorities stands for the proposition that, where a statute requires delivery of a policy to the insured and the insurer fails to deliver the policy according to the statute, the insurer may be estopped from asserting coverage conditions or exclusions that are in the policy but are not disclosed to the insured. There is also authority in Alabama for this general proposition. InMoses v. American Home Assurance Co., 376 So.2d 656 (Ala. 1979), this Court reversed a summary judgment in favor of an insurer where a genuine issue of agency existed and concluded that, if the agency did exist, then there would be "a genuine issue as to whether [the insurer] is estopped from denying coverage."Id. at 658. Section 27-20-2(2), Ala. Code 1975, requires that each group disability insurance policy contain a provision obligating the insurer to "furnish to the policyholder for delivery to each employee, or member of the insured group, a statement in summary form of the essential features of the insurance coverage of such employee or member and to whom benefits thereunder are payable." Moses's husband was killed in an automobile accident while traveling on company business within his regular territory. A group disability policy had been issued to his employer that provided coverage only for business trips outside of an employee's regularly assigned territory. The insurer had issued no certificate or other evidence of coverage to the employer or to any of its employees. The employer, however, had provided a brochure regarding employment benefits that characterized travel accident insurance as applying to "an accident while traveling on Company business." This Court held that § 27-20-2 imposed a duty upon the insurer to furnish a summary statement of coverage to the employer for distribution to its employees. Id.
at 658. Most importantly, this Court held that whether the brochure issued to the employees superseded the policy limitation and whether it estopped the insurer from denying coverage were factual questions for the jury to decide. Id. *Page 58 
We conclude that when an insurer has not complied with §27-14-19 and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid coverage exclusion. Permitting such an estoppel is a reasonable means to further the obviously beneficent purpose of the statute. Section 27-1-12, Ala. Code 1975, provides for a criminal fine to be imposed for each "willful violation" of the provisions of the "Insurance" title of the Code, but this provision is subject to any "greater penalty . . . provided . . . by other applicable laws of this state." Merely imposing a fine to enforce the statute does not benefit the insured, who may be greatly prejudiced by a violation, whereas recognizing an estoppel in certain circumstances provides a deterrent to violating the statute and also protects the insured. Also, to recognize an estoppel in certain circumstances would be, in effect, to impose a "greater penalty" than the misdemeanor fine provided in § 27-1-12; thus, that provision does not preclude such a remedy. No other provision in the "Insurance" title precludes estoppel as a remedy for a violation of § 27-14-19.
As we pointed out above, the general rule in Alabama is that insurance coverage cannot be created or enlarged by estoppel.See Johnson, supra. However, we recognize an exception to this rule in answering these certified questions. To do otherwise would defeat the purpose of the statute. If we were to hold that the general rule controls, then § 27-14-19 would have no practical effect, because in every instance where an insurer failed to comply with that section, it could simply assert the general rule, perhaps pay a nominal fine, and deny coverage.
Thus, on the most fundamental level, the answer to the first certified question is yes; an insurer who fails to follow the statutory mandate of § 27-14-19 may be estopped from asserting an otherwise valid coverage exclusion. Judge DeMent's question, however, adds a further factual predicate to the question, based on the effect of the insurer's providing "a certificate of insurance which sets out the general coverage without enumerating the limitations and exclusions." We must address this additional factor by analyzing two closely related subissues: first, the meaning of the operative phrase "to the insured or to the person entitled thereto" in § 27-14-19; and second, whether, or to what extent, delivery of a certificate of insurance in lieu of the actual policy may fulfill an insurer's obligations under § 27-14-19.
We are hesitant to draw hard and fast lines at this point as to the meaning of the term "the insured" in § 27-14-19,[3] because the issue was not briefed by the parties or mentioned at oral argument. However, we are equally hesitant to completely withhold guidance on the issue, because to do so would be a disservice to the district court. Clearly, whether Brown is an "insured," and, if so, to which specific class of "insureds" it belongs, are issues of fact to be decided by the district court.
As a general matter, it has been written that "[t]he party who enters into the contract of insurance or assurance with the insurer or assurer is called the 'insured' or 'assured.' "Couch on Insurance 2d (Rev. ed.) § 23:1 at 769 (1984). Further, "as a general rule the term 'insured' as used in [a standard policy] refers to the owner of the property insured, to whom the policy is issued and by whom the premium is paid, and does not include a person appointed to receive a portion of the proceeds in case of loss." Id. at 770. Although the generalities set out by Couch may not substantially aid in comprehensively defining "the insured or . . . the person entitled thereto," as that phrase is used in § 27-14-19, we find that Couch's general definitions provide a starting point from which we may determine the first level of inclusiveness for the phrase.
It is clear that the phrase "the insured or . . . the person entitled thereto," as it is used in § 27-14-19, should include the purchaser of the policy and the named insured in the policy. The purchaser of the policy may not *Page 59 
always be named as an insured under the policy, but we conclude that such a purchaser is entitled to a copy of the policy either as "the insured" or as "the person entitled thereto." We are aware of public policy concerns that may militate for or against construing the phrase "the insured or . . . the person entitled thereto" to include all persons who may be entitled to some coverage under a given policy, especially where large fleet or group policies, or similar kinds of policies, are concerned. Thus, beyond the purchaser of a policy and the policy's named insured, we do not now decide other classes the phrase definitely may include, but proceed to the second, closely related, subissue.
The persuasive authorities discussed above, holding, where a statute requiring delivery of a policy is not complied with, that delivery of a certificate of insurance is insufficient to allow the insurer to avoid coverage by asserting conditions or exclusions not communicated to the insured, generally rely on the following propositions of law: first, that any ambiguity in an insurance contract, including an ambiguity in an exclusion provision, is construed against the insurer and in favor of the insured; see Louisiana Maintenance, 616 So.2d at 1252; Moore, 814 P.2d at 1143; second, that the first proposition may be based upon the premise that insurance contracts are generally contracts of adhesion and are frequently written to afford the most protection to the insurer; see Moore, 814 P.2d at 1143; and third, that a certificate of insurance delivered to the insured and containing terms more favorable to the insured than those in the policy will control over the policy if the policy is not delivered to the insured; Moore, 814 P.2d at 1144;John Bader, 65 Ill.Dec. at 794, 441 N.E.2d at 1308.[4] Thus, the extent to which these propositions are recognized by Alabama law is relevant to the determination of whether, or to what extent, the delivery of a certificate of insurance in lieu of the actual policy may fulfill an insurer's obligations under §27-14-19.
It is well settled in Alabama that ambiguities in an insurance contract are to be construed in favor of the insured and that "exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." Amerisure Ins. Cos. v. Allstate Ins. Co.,582 So.2d 1100, 1102 (Ala. 1991) (citing Altiere v. Blue Cross Blue Shield of Alabama, 551 So.2d 290 (Ala. 1989); Jackson v.Prudential Ins. Co., 474 So.2d 1071 (Ala. 1985)). It is equally well settled in Alabama, however, that unambiguous policies are to be enforced as written. See, e.g., id.; Gardner v. CumisIns. Society, Inc., 582 So.2d 1094, 1096 (Ala. 1991) (citingBest v. Auto-Owners Ins. Co., 540 So.2d 1381 (Ala. 1989)).
While the fact that an insurance policy is written by the insurance company is often noted in conjunction with the proposition that an ambiguous provision is construed against the insurer, see Guaranty Nat'l Ins. Co. v. Marshall County Bd.of Educ., 540 So.2d 745, 748 (Ala. 1989); Fidelity CasualtyCo. v. Landers, 283 Ala. 697, 220 So.2d 884, 886 (1969);Sovereign Camp, W.O.W. v. Adams, 204 Ala. 667, 671, 86 So. 737,741 (1920), the proposition that insurance contracts are generally contracts of adhesion is much less prevalent in Alabama law. In addressing the question whether to "stack" uninsured motorist coverages, this Court has quoted Professor Keeton as stating that "[i]nsurance contracts continue to be contracts of adhesion," Travelers Ins. Co. v. Jones,529 So.2d 234, 239 (Ala. 1988) (quoting Lambert v. Liberty Mut. Ins. Co.,331 So.2d 260, 263 (Ala. 1976) (quoting R. Keeton, Basic Text onInsurance Law § 6.3(a), at 350 (1971))), but we have encountered very few other explicit statements of the proposition. See Middlesex Mut. Ins. Co. v. Wells, 453 F. Supp. 808,809 (N.D.Ala. 1978); Fidelity Casualty Co. v. WattsRealty Co., 500 So.2d 1126, 1128 (Ala.Civ.App. 1986).
As to the proposition that a certificate of insurance delivered to the insured and containing terms conflicting with those in the *Page 60 
policy will control over the policy if the policy is not delivered to the insured, we have located no Alabama cases directly on point, but we have precedent establishing the relationship between an insurance certificate and certain kinds of master policies. Initially, we note that this Court has held that "[t]he [group insurance] policy contract is to be found upon examination of the provisions of the certificate in connection with those of the 'Master Policy' and application therefor, and the individual application of the insured person." All States Life Ins. Co. v. Steward, 242 Ala. 258,259, 5 So.2d 784, 785 (1942). Additionally, this Court has stated, again in the group policy context:
 "We do not hold that a certificate issued by the insurer to the employer to be furnished the employee as evidence of his insurance benefits is to be ignored in construing the contract. If its terms definitely contradict those of the master policy on a material point, so as to silence inquiry in that regard, the rule of liberal construction should be applied in favor of the certificate holder."
Page v. Prudential Ins. Co., 231 Ala. 405, 408, 165 So. 388,390 (1936); accord, White v. Massachusetts Mut. Life Ins. Co.,275 Ala. 581, 157 So.2d 6 (1963). In Page, the Court concluded that the master policy provisions controlled, because the certificate stated that the benefit at issue accrued "as provided in the policy." 231 Ala. at 408, 165 So. at 390. InWhite, the Court concluded that the master policy provisions controlled, because the certificate stated that "it was subject to all of the provisions of the policy." 275 Ala. at 586,157 So.2d at 10-11.
In drawing together these two subissues and the overall question of the effect of delivering a certificate of insurance, it is instructive to employ a hypothetical spectrum of possible insureds or of persons to whom benefits may possibly be owed under an insurance policy. On one end of the spectrum are the purchaser of the policy and the named insured, both of whom we have concluded are definitely included in the phrase "the insured or . . . the person entitled thereto," as it is used in § 27-14-19. On the other end are incidental beneficiaries and beneficiaries of a group policy, who we conclude are probably excluded from the statutory phrase and are therefore not individually entitled to copies of the policy, absent an inquiry, even though they may be "insureds." We do not read the statute as being so broad as to extend the right to receive a copy of a policy to all persons who may claim some coverage rights under the policy. A balance must be struck between the beneficent purpose of the statute and the burden it places upon the insurance company.
Between the ends of the spectrum are the remainder of the classes of insureds: named and unnamed additional insureds, third-party beneficiaries, fleet policy beneficiaries, etc. The question of Brown's status, given the evidence in this case, and the question of which end of the spectrum the INA/TCAS policy is closest to are for the parties to argue to the trier of fact. This Court is not in a position to decide whether Brown is entitled to a copy of the policy under § 27-14-19.
We choose not to draw any further conclusions upon the inclusiveness of the phrase "the insured or . . . the person entitled thereto." Therefore, it is in determining who among those between the ends of the spectrum are included in the term that Alabama law pertaining to construction of policy provisions and Alabama law pertaining to the relationship between a certificate and a policy become relevant. We note the proposition that ambiguities are construed in favor of coverage and that this proposition is based upon the fact that it is the insurance company that writes the policy, but we note that this Court seldom characterizes an insurance contract as one of adhesion. We also note that, at least as to group policies, our law is inclined to recognize that the provisions of a master policy will control over a general certificate evidencing coverage, at least if the certificate disclaims any effect upon the insured's rights and policy and if the language of the certificate does not "definitely contradict" the policy.
In determining who is included in the statutory phrase "the insured or . . . the person entitled thereto," one must interpret the phrase in light of these principles. In determining *Page 61 
which persons are included in that phrase beyond those we have herein specifically held to be included, one should be guided by the following statement: In the hypothetical spectrum set out above, the further away a particular insured or beneficiary is from those we have held are definitely included in the statutory phrase, then the less likely that the insured or beneficiary will be included. Accordingly, proceeding in the spectrum away from those to whom the statute definitely applies, it becomes more likely that provisions of undelivered policies will control over the terms of a delivered certificate of insurance if the certificate disclaims any effect on the coverage contained in the policy and if it does not "definitely contradict" the policy; consequently, it also becomes less likely that the insurer will be estopped from asserting otherwise valid conditions of, or exclusions from, coverage that are contained in the policy but not in the certificate.
We hold that § 27-14-19 requires that the insurance policy be "mailed or delivered" to the purchaser of a policy and to the named insured, and that an insurer may be estopped from asserting conditions of, or exclusions from, coverage where such a purchaser or insured is prejudiced by the insurer's failure to comply with the statute. Additionally, because the purchaser and the named insured are so obviously included within the terms of § 27-14-19, we hold that the mere delivery of a certificate of insurance, even one disclaiming any effect on the purchaser or the named insured's legal rights under the policy, will not be sufficient to comply with the statute. We leave open the question of what other insureds or beneficiaries the statutory phrase "the insured or . . . the person entitled thereto" may include.
In conclusion: The basic answer to the first certified question is yes, in a breach of contract action when an insurer fails to deliver a copy of the policy to an insured in accordance with Ala. Code 1975, § 27-14-19, the insurer may be estopped from asserting an otherwise valid exclusion. The additional factor — the delivery of a certificate of insurance — will not necessarily change the answer if § 27-14-19 is found to apply to Brown. If Brown is found not to be an "insured or . . . [a] person entitled" to a copy of the policy, then the effect of the delivery of the certificate of insurance should be determined by the existing law on the issue; our existing law is unaffected by this decision. See, e.g., Page v.Prudential Ins. Co., supra.
 II.
The answer to the second certified question is that Bodi 
Wachs's alleged misrepresentations do not alter the Court's opinion. If the facts alleged by Brown as to Bodi Wachs's conduct constitute fraud, that is a separate matter. Such facts, whether or not they are sufficient to establish fraud, do not affect whether Brown is "the insured or . . . the person entitled thereto," but they may be relevant, if § 27-14-19 is found to apply, in determining whether Brown was prejudiced by the insurer's failure to comply with the statute.
QUESTIONS ANSWERED.
MADDOX, SHORES, HOUSTON, INGRAM and BUTTS,* JJ., concur.
[1] At this point in the certified question, the district court indicated the following in a footnote: "However, the certificate of insurance does state that the certificate does not amend, extend or otherwise alter the terms and conditions of insurance coverage contained in the policy."
[2] Exclusion 12 provides as follows:
"[This Policy Does Not Apply:]
 "As respects Coverage A, to loss due to conversion, embezzlement, or secretion by any person in lawful possession of the aircraft under a lease or rental agreement, conditional sale, mortgage or other encumbrance. . . ."
"Coverage A" provides that INA agrees with the insured
 "To pay for any loss of or damage to the aircraft while in flight or not in flight; also disappearance if the aircraft is missing and not reported for sixty (60) days after commencing flight. . . ."
[3] The statute states that "every policy shall be . . . delivered to the insured or to the person entitled thereto." We are satisfied that the phrase "the person entitled thereto" may be fairly read as "the person entitled to the policy." The latter is the language employed in the Georgia statute. See Ga. Code Ann. § 33-24-14(a) (Michie 1990).
[4] Note that this third proposition is consistent with the more frequent and more general holding that a coverage exclusion of which the insured has no notice may not be enforced against the insured. See Louisiana Maintenance, 616 So.2d at 1253; Pedrick, 511 N.Y.S.2d at 195; Espree, 324 P.2d at 752.
* Although Justice Butts was not a member of this Court when this case was orally argued, he has listened to the tape of oral argument and has studied the record.